PHILIP J. FERENTCHAK *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF FRANKFORT *et al.*, Defendants-Appellants (Albert H. Krusemark, Jr., *et al.*, Defendants).

Third District   Nos. 3—83—0116, 3—83—0138 cons.

Opinion filed January 26, 1984.

STOUDER, P.J., concurring in part and dissenting in part.

Mark A. Pheanis and John C. Bartler, both of McKenna, Storer, Rowe, White & Farrug, of Wheaton, for appellant Village of Frankfort.

Robert J. Baron, of Thomas, Wallace, Feehan, Baron and Kaplan, Ltd., of Joliet, for appellant Robert E. Hamilton.

Harry D. Leinenweber, of Dunn, Leinenweber & Dunn, Ltd., of Joliet, for appellees.

JUSTICE ALLOY delivered the opinion of the court:

This is a consolidated appeal from judgments entered by the circuit court in favor of plaintiffs Philip and Caroline Ferentchak and against defendant Robert E. Hamilton and defendant village of Frankfort, a municipal corporation. The case is based upon property damage to the plaintiffs' home in the village of Frankfort as a result

of alleged negligence by the defendants. The jury found against both defendants. The separate appeals by the defendants have been consolidated for appeal. A threshold issue, raised by both defendants, is whether the plaintiffs' negligence actions seek merely "economic damages," and are, therefore, barred by the decisions of the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 325. Since we find no bar to the negligence actions under *Moorman,* we also address the other issues raised by the defense. Defendant Robert Hamilton contends that his liability, as architect and subcontractor, terminated upon completion of his contract with the builder and acceptance of his work. He also contends that the trial court committed prejudicial error in permitting plaintiffs' expert to testify to his opinion as to unethical conduct by Hamilton. The municipal defendant, village of Frankfort (hereinafter Frankfort), argues that the plaintiffs failed to both state and prove any cause of action against it. We turn to the facts as found in the record.

In 1971, Albert Krusemark (hereinafter developer) engaged defendant Robert Hamilton, an Illinois civil engineer and sole proprietor of his own consulting firm, to design and oversee the construction work on a subdivision in Frankfort. The contract called upon Hamilton to design and construct the subdivision so as to meet applicable code requirements of the village. Included in the subdivision design and construction work was a surface water drainage system for the project. Hamilton, pursuant to his contract with developer, did the engineering work on the project.

Hamilton, at the same time, was also the village engineer for Frankfort. In that capacity, he reviewed the subdivision plans submitted by developer to the village planning commission. Such review required him to assess if the proposed plans complied in all respects with the village's building and zoning codes. Hamilton reviewed the plans and passed them, advising the board in writing that they conformed to applicable village standards. The subdivision plat was accepted by the village and the plat was recorded in 1973.

Hamilton's plans concerning the surface water drainage system for the subdivision included a 20-foot wide channel easement for surface water drainage between the northern boundary of Lot 82 and the southern boundary of Lot 81 in the subdivision. The designation "channel easement" was on the plat of the subdivision between those two lots, although there were no specifications on the plans indicating the shape or depth of any channel to be constructed. The village's

1971 ordinances did not require that such specifications be included on subdivision plats. Hamilton would testify later at trial that the omission of specifics was intentional, to permit individual development of the lots, while reserving to the village the right to restore the natural drainage, through use of the channel easement. Hamilton also testified that no specifics were set forth because there was no way of knowing how the adjacent properties would be developed, which development would affect the design of the channel.

Lot 81, the property at issue herein, was sold by developer to Lidio Filippo (hereinafter builder) in 1975. Builder then applied to the village for a building permit for construction of a single-family residence on Lot 81. At the time of his application, he was informed by William Knippel, building and zoning codes administrator for the village (hereinafter Code Administrator), that the foundation grade of the home had to be a certain number of inches about the mid-level of the curb or street. Builder testified at trial that Code Administrator informed him specifically of what foundation grade to build for the house. Code Administrator testified that he informed the builder of the standard minimum foundation level required by the city, thereby leaving a final decision as to foundation grade above that level to the builder. Code Administrator also stated that the plans submitted by builder in his application for building permit did not contain any specification as to foundation grade level. When the builder indicated that he was ready to pour the footings, Code Administrator visited the premises for an on-site inspection prior to commencement of the cement pour. At that time, Code Administrator directed that the foundation be raised as much as possible and still remain on good, bearing soil. The foundation height was raised several inches above the minimum, or approximately 20 inches above middle of the lot. The home was built on Lot 81 with the foundation at the height indicated by the Code Administrator at the time of construction, approval of building having been given.

Subsequent to construction of the home, builder sold the property to plaintiffs Caroline and Philip Ferentchak, in August of 1976. There was some delay in the Ferentchaks' taking possession as a result of problems obtaining the occupancy permit from the village. Code Administrator, prior to approving an occupancy permit for the home, insisted that builder put in a drainage swale, as indicated on the plat of the subdivision. Builder testified at trial that he was unaware that a drainage swale had to be constructed until so informed by the Code Administrator during the attempt to obtain the occupancy permit. The permit was withheld until the drainage matters were addressed.

Since the plat contained no specifics as to construction of the swale, builder asked Code Administrator what needed to be done to get the approval on the permit. Code Administrator, after consulting with Bruce Hamilton, an employee of defendant, Robert Hamilton, gave builder specific directions for construction of the drainage swale on Lot 81. In the same period of time, Code Administrator, during a visit to the site, objected to a crown, or gentle slope, that ran across the rear portion of Lot 81. He felt that the crown would impede proper drainage and was, therefore, unacceptable. On his directions, the builder flattened the crown so that water would drain from north to south, from the back of the lot to the front. Builder also dug the drainage swale and sodded it according to directions from the Code Administrator. Code Administrator thereafter visited the site and approved the occupancy permit, the required changes having been made.

In January 1977 the Ferentchaks began to experience water problems at their new home. They noticed water in the back portion of the rear yard, as well as the water running in the swale to the street. In February 1977, water was observed in the family room down in the basement. The problems with water oozing into the lower level of the house have continued since that time, without significant abatement, whenever there is a heavy rain in the area. Their attempts to solve the problem, through basement waterproofing, were unsuccessful. In the spring of 1978, Colin Gray, a civil engineer obtained by the Ferentchaks' attorney, examined the property. He later would testify as their chief expert witness at trial.

The Ferentchaks also continued to complain to builder and to the village concerning their problems. In the spring of 1978, after discussions between plaintiffs' counsel and the village board and its engineering department, the Hamilton firm was instructed by the board to visit the Ferentchak property to make observations. Bruce Hamilton did so and noted two problems already referred to, that is, the surface ponding in the southwest corner of the lot and water leaking into the lower level of the home. As a result of his recommendations for modifications, the village regraded the swale in the summer of 1978. This action had no apparent effect on the problem, as plaintiffs' evidence indicated that the flooding continued with the same regularity as prior to the changes in the swale made by the village.

Plaintiffs' expert was Colin Gray. Gray testified that it was his opinion that the basic problem with the home was that the foundation grade had been set too low, and that this fact, coupled with an inadequate and improper drainage system, resulted in the damage to plaintiffs' home. Gray gave his expert opinion that the subdivision plans

drawn by Robert Hamilton failed to meet sound engineering standards, in that they (1) lacked specifics as to foundation levels for the homes in the subdivision; (2) lacked specifics as to design criteria for the drainage swale; and (3) contained inadequate specifics for the grading of the subdivision. Gray concluded that the design in the plans was inadequate to properly drain the contributory drainage area in the subdivision and that the house was set too low in relation to nearby houses.

The defense experts varied in their appraisal of the causes and the duties involved herein. One defense expert, Joseph Schudt, agreed that the foundation was too low, given all the other factors involved. Two other experts found no fault with the foundation grade. All of the experts who testified indicated that the lot grade drainage was improper, with Gray concluding that no amount of further lot grading would cure the problem, because of the foundation level and the amount of drainage area to be drained. As to the sufficiency of the surface water drainage system plans, designed by Hamilton, the defense witnesses found that they were adequate to meet standards in existence in 1971 in Will County. Gray, as noted, disagreed, and testified that the plat failed to meet sound engineering standards applicable at the time. Gray also testified, over objection, that it was improper, in his opinion, for an engineer to design a subdivision plat and review his own design as village engineer, absent an express recommendation by him to the village to retain another engineer to review his work. The defense experts found no impropriety in the manner in which the plans were drawn and approved.

The jury returned verdicts in favor of the plaintiffs and against both Hamilton and the village of Frankfort. From judgments on those verdicts, the parties now appeal.

A threshold issue, common to both appeals, is whether the Ferentchaks' causes of action against each defendant, sounding in negligence, are barred by the decisions of the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 325. In seeking to apply the *Moorman* decision, the defendants place undue emphasis on the nature of the damages involved, thereby proceeding to an erroneous conclusion as to the "economic loss" doctrine's scope and applicability. The argument is essentially that since the Ferentchaks' claim for damages, as against all three defendants, was for the costs of repair to their home and diminution in value, due to the water damage; therefore, they suffered only economic losses for which no tort recovery is available. Put dif-

ferently, the village contends that since these economic losses could not be recovered under a tort theory as against the builder, therefore, tort recovery is also barred as to other parties. This approach adopts too simplistic an analysis of *Moorman,* focusing solely on the nature of damages while ignoring the policy behind and analytical underpinnings of that opinion. As this court noted in *Vaughn v. General Motors Corp.* (1983), 118 Ill. App. 3d 201, 454 N.E.2d 740, the Illinois Supreme Court in *Moorman* and its progeny did not intend that the nature of damages be the sole factor used in distinguishing a tort claim from a contract claim. As insightful commentary has noted, *Moorman's* bar to tort recovery for economic losses does not focus on a particular type of damage, so much as it identifies harm originating from a particular context, the commercial context wherein harm is to a consumer's commercial expectations. (See Bertschy, *The Economic Loss Doctrine in Illinois after Moorman,* 71 Ill. B.J. 346 (1983).) The court in *Moorman* cited with approval the following passage from *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165:

> " '*** [T]he items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.' " (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 85.)

In assessing those factors in the instant case it is important to look at the asserted causes of plaintiffs' damages ("manner in which injury arose") and relative position of the defendants and their actions, respecting the injury and the plaintiffs ("nature of the defect" and "type of risk").

█ █ In this case, the plaintiffs' proof indicated that the damages resulted (1) from Hamilton's (architect for the developer) failure to adequately design the subdivision's surface water drainage system and (2) from the village's incorrect design of the foundation grade, yard grade and drainage swale. As against the municipal defendant, the plaintiffs' theory was that their damages had resulted from a defect in the house and a defect in the surface drainage, both caused by improper and incorrect village action in enforcing its code and building requirements. As against Hamilton, the architect, the theory was that he had contributed to the damage through his improper design of

the subdivision and its drainage system. Thus, one alleged cause is a defect in qualitative nature of the home, but the defect is not the result of acts or omissions of the builder. Rather it is the result of acts or omissions of a third party, here the village, coupled with a contributory cause grounded upon the acts and omissions of another third party, here the architect. Neither of these third-party defendants are persons for whom the builder of the home assumed responsibility. While the defendants are correct in saying that the nature of the damages are the same as suffered by the plaintiffs in *Redarowicz,* they are incorrect in concluding that *Redarowicz,* therefore, bars recovery in tort as against any and all defendants who may have contributed to those economic damages. As against the builder, who was alleged to have constructed a defective home and who was also a party defendant in this case, *Redarowicz* bars recovery in tort by these plaintiffs. As to the builder, plaintiffs' injuries related to their commercial expectations as to the quality of the product furnished by him. They reasonably expected a home they could live in without water damage, and he did not provide that. As to injuries the fault of the builder, plaintiffs suffered economic losses not recoverable in tort. However, as against the village and the architect for the developer, who allegedly caused and contributed to the damages, in the manner stated above, the same bar is not applied, even though the nature of the damages is identical. We read *Moorman* and subsequent cases to establish that economic losses are not recoverable in tort against a defendant where the injuries caused by that defendant relate directly to plaintiff's reasonable commercial expectations respecting the defendant's actions *and* where plaintiff has or had appropriate and adequate contract or warranty actions as against the defendant for such harm. In such circumstances, and where the injury is to the item supplied or produced by that defendant, contractual benefit-of-bargain expectations damages are the appropriate measure of recovery. However, the same economic losses are recoverable in tort, as against defendants who by their own negligence, as measured by traditional tort analysis, have caused the injuries and against whom no contract or warranty recovery is available. As to these defendants, when unconnected with the contract-warranty defendant, the harm caused by them is not related to the plaintiff's commercial expectations, but to traditional societal expectations and conduct. See, *e.g., Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, discussed in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 89, wherein the court found economic loss, but concluded that the surveyor was nevertheless liable in tort to the plaintiffs who had subse-

quently been injured by his acts and omissions.

Moorman, Redarowicz and *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125, have all dealt with situations and parties wherein the alleged harm was caused by a defendant, was related to plaintiff's legitimate and reasonable commercial expectations as to defendant's actions, and where either the law of contract or warranty provided appropriate remedy to the injured plaintiffs. In *Redarowicz,* the court supplied the adequate and appropriate remedy by creating a warranty of habitability running to the subsequent purchaser from the original builder. The court in that case acknowledged and concluded that subsequent purchasers of residential property have valid and reasonable commercial expectations concerning the quality of the product and the builder's performance and that those expectations were more appropriately protected by traditional contract-warranty theories. The emphasis in *Moorman,* carried over into *Redarowicz,* was upon legitimate consumer expectations of a plaintiff against a defendant and upon the appropriateness and availability of contract and warranty protections to cover the harm to those expectations. In the instant case, as against defendants Hamilton and the village of Frankfort, plaintiffs had no direct or indirect contractual relationship, the harm they suffered from these defendants did not relate directly to reasonable commercial expectations about their actions, and they had no contract or warranty recovery.[1] While *Moorman,* after *Redarowicz,* clearly cannot be restricted to products liability actions and situations with available UCC remedies, nevertheless, we view the court's intention in *Moorman* to confine its doctrine barring tort recovery for economic losses to commercial contexts, wherein the harm was to a plaintiff's reasonable commercial expectations and where the plaintiff's remedies against the party causing the harm are sufficient under contract or warranty theories of recovery. This view of *Moorman* is not without conceptual difficulties, to be sure, for *Redarowicz* indicates that purchasers of homes and products have valid reasonable commercial expectations as against persons responsible for the products, totally apart from questions of privity, and harm to those expectations are more appropriately handled by contract-warranty law. In the instant case, while the architect was not an employee or in any direct relation with the

---

[1]Our conclusion could well be different, as to the architect, were there available to plaintiffs an "out of privity" system of warranties to protect warranty-like, that is contract-like, interests. (See *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 98-99 (Simon, J., specially concurring).) The court did not extend the warranty-protections system that far in *Redarowicz.*

builder, being the architect for the subdivision developer, nevertheless it can be arguably maintained, under a *Redarowicz* analysis, that these plaintiffs had reasonable commercial expectations concerning the quality of work and performance of all persons whose activities combined to produce the product they purchased, their home and lot in this subdivision. This would include both those supplying a product as well as those supplying services, for commercial-contractual and warranty-like expectations pertain to both. However, as noted, there is no existing adequate remedy against the architect, for there is no warranty-like remedy against all persons in the chain of production. To conclude that the harm was to plaintiffs' consumer expectations as against the architect for the developer, but that they had no remedies as to him, would be to leave plaintiffs with no action, except as against the ultimate supplier, here the builder, who would then be left to possible third-party actions against those responsible in the chain of production. We find that result inadequate, however conceptually sound, and not intended by the court in *Moorman*. We do not believe the court in *Moorman* intended its decision therein to bar tort recovery as against the architect in the instant case, if he were otherwise negligent in the performance of his duties (see *Rozny v. Marnul* (1969), 43 Ill. 2d 54, discussed and approved in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 89) simply because the plaintiffs might have an adequate contract-warranty remedy against the builder. We note that the architect herein was not an employee of the builder or otherwise in privity with him, and the architect's contractual obligations ran to the developer who eventually sold the lot to the builder. If the direction of the Illinois Supreme Court is to broadly apply the *Moorman* doctrine against tort recovery for economic loss to situations such as the instant case, then this case presents an opportunity for them to so state. We conclude that the plaintiffs' tort actions against the village and against the architect were not barred by the decisions of the court in *Moorman* and *Redarowicz*. As against these defendants, the plaintiffs suffered economic losses for which *Moorman* does not bar tort recovery. We turn then to the other issues raised by these defendants.

■ Defendant Robert Hamilton, architect for the developer, raises the issue of whether his liability, as an independent contractor for the developer, terminated upon completion and acceptance of his work by the developer. Hamilton argues that it did, citing to *Empire Laundry Machinery Co. v. Brady* (1896), 164 Ill. 58, 45 N.E. 486, and *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275. Hamilton argues that the facts of the instant case do not bring it

within any of the exceptions set forth in the *Paul Harris* opinion. The plaintiffs argue that traditional tort analysis, focusing upon foreseeability of the injury, should be applied, rather than artificial concepts such as privity. We agree. In *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, the court found that a surveyor for the builder was liable in tort to subsequent purchasers of a home for his negligence in performing his duties as a surveyor. There were no personal injuries involved in the case and no question of any dangerous condition resulting from his negligence. The court discarded the privity requirement and replaced it with a traditional tort analysis of the scope of duty, based upon foreseeability. (43 Ill. 2d 54, 62-67.) Then in *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 208-09, 384 N.E.2d 368, the court explicitly discarded the general rule of nonliability for independent contractors who negligently make, rebuild or repair chattels for another, indicating a traditional negligence analysis as to duty should apply. Other cases have indicated the continued erosion of the doctrine of nonliability set forth in *Paul Harris.* (*Johnson v. Equipment Specialists, Inc.* (1978), 58 Ill. App. 3d 133, 138-42, 373 N.E.2d 837; *Fournier v. 3113 West Jefferson Partnership* (1981), 100 Ill. App. 3d 820, 821-22.) While most of these cases, with the exception of *Rozny v. Marnul,* could be confined to instances wherein independent contractors have supplied chattels or created conditions giving rise to foreseeable injury to persons on or about the premises (see Restatement (Second) of Torts secs. 352, 353, 404, 385 (1965), given the broad statement of repudiation in *Hunt v. Blasius* and the decision in *Rozny v. Marnul,* we conclude that the general rule of nonliability in *Paul Harris* has been discarded, to be replaced by traditional tort analysis of any alleged negligence. No issue is properly raised by defendant Hamilton as to his liability under traditional tort analysis for duty and foreseeability.

■ The only remaining issue raised by Hamilton is whether the trial court committed prejudicial error by permitting plaintiffs' expert to testify to his opinion that Hamilton's conduct in both designing the subdivision and reviewing those plans as village engineer was unethical, in that it created a conflict of interest. We find no reversible error. Plaintiffs' expert stated his opinion that it was a conflict of interest, indicating that the proper procedure would have been for Hamilton to have recommended an independent evaluation. The defense countered with testimony from other experts that concluded there was no unethical or improper conduct by Hamilton. Evidentiary questions are largely within the discretion of the trial judge, and while the relevancy of this evidence is slight, we find no abuse of dis-

cretion in the court's admission of the testimony sufficient to justify reversal. In those cases cited by the defendant there were highly prejudicial remarks made by counsel without evidence in the record to support them. Here the evidence arguably supported the opinion testimony of plaintiffs' expert and we will not reverse thereon.

■ We turn next to the issues raised by the appellant village of Frankfort. The village argues that the evidence in the record fails to demonstrate that it had any duty to plaintiffs and also fails to establish that any acts of the village were negligent or were a proximate cause of the plaintiffs' damages. We agree. Except for the village's action in 1978 wherein its crew modified the drainage swale, all of the village's actions were taken pursuant to its zoning and building code enforcement authority and duties. Thus, the Code Administrator's actions in specifying the height of the foundation grade was taken pursuant to his authority and duty to enforce applicable rules and ordinances for building permits. Issuance of the building permit, after compliance with applicable requirements, was within his jurisdiction as Code Administrator. Similarly, his action in setting forth the specifics of the drainage swale, in 1976, and the grade for the back yard, were taken within his authority and duty as enforcement officer charged with overseeing the issuance of occupancy permits after compliance with applicable requirements. The fact that the municipality was insured, thereby waiving defenses granted it by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 1—101 *et seq.*), does not serve to impose duties upon the municipality. (*Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 512, 369 N.E.2d 917.) Rather, a plaintiff must still premise a negligence action against a municipality upon a duty to him in the factual circumstances of each case. (54 Ill. App. 3d 509, 512; *Konicki v. Village of Hinsdale* (1981), 100 Ill. App. 3d 560, 563, 427 N.E.2d 325.) In *Hannon,* where a village's alleged negligence in failing to enforce its building ordinances was asserted, the court examined the question of duty within a similar context:

> "The analogous cases, however, draw a distinction between ordinances which are designed to benefit the public at large and those designed for the benefit of individual members of that public. The failure to enforce the former will not raise a duty the violation of which could support a cause of action for damages against the municipality.
>
> In *Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26, an infant brought an action against the city for injuries resulting from ingestion of lead-based paint on the theory the city

negligently failed to enforce a section of its housing code requiring that buildings be in good repair and habitable. While plaintiff also contended the Tort Immunity Act did not protect the city under the circumstances, the court did not reach that issue in determining defendants did not owe a special duty to plaintiff and affirmed the trial court's dismissal of the complaint reasoning that:

'This ordinance was enacted to benefit the public health and safety of the people of the city. Its enforcement was a governmental function rather than a ministerial or proprietary act. The ordinance did not give rise to any special duty to the plaintiff or to any particular person different from the public at large. (See: *Gardner v. Village of Chicago Ridge,* 71 Ill. App. 2d 373.) If the failure of the city to enforce this ordinance should render it liable for injuries sustained thereby, the tremendous exposure to liability would certainly dissuade the city from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutary legislative enactments.' 48 Ill. 2d 20, 24-25, 268 N.E.2d 26, 29.

Similar analysis was applied in *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293, where the *** court considered the element of a legal duty was determinative of plaintiff's claim and found there was none, stating:

'Where the duty is owed to the public generally, no action lies on behalf of an individual for failure of performance, but where the duty is intended to benefit the individuals composing the public, failure to perform such duty gives rise to a cause of action in favor of anyone injured by such failure. (65 C.J.S., *Negligence* sec. 4(8), at 499 (1966).) *** Here, the City of O'Fallon owed a duty to the general public to protect public property from subversion to purely private uses. This duty is not transferable to an individual in the event the city is negligent in performing the duty.' 43 Ill. App. 3d 348, 358-59, 356 N.E.2d 1293, 1302.

Other jurisdictions have persuasively considered this question on a factual basis similar to that in the instant case. In *Hoffert v. Owatonna Inn Towne Motel, Inc.* (1972), 293 Minn. 220, 199 N.W.2d 158 ***. *** The court stated plaintiffs were required to show a breach of a duty owed them in their individual capacities and not merely a breach of some obligation owed the gen-

eral public, stating:

'The purpose of a building code is to protect the public. This is well stated in 7 McQuillin, Municipal Corporations (3 ed.) sec. 24.507, p. 523:

"*** The enactment and enforcement of building codes and ordinances constitute a governmental function. The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals."

Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises.' 293 Minn. 220, 222-23, 199 N.W.2d 158, 160."
(*Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 513-15.)

These rules, refusing to impose a duty upon municipalities in the enforcement of their zoning and building rules and regulations, were applied in *Konicki* to deny liability on the part of the municipality for alleged negligent interpretation of its zoning ordinance and building code. (*Konicki v. Village of Hinsdale* (1981), 100 Ill. App. 3d 560, 564-65.) The court there also rejected plaintiff's contention that having interpreted its ordinance for him, the municipality had thereby assumed a "special duty" to him, such that liability would lie against it.

■ The zoning ordinance and building code of the village of Frankfort, as with those other municipalities, were enacted for the purpose of assuring protection to the public generally in the construction of buildings within the municipality. This is achieved through the imposition of minimum requirements and regulations designed to apply generally to all such construction. As in the above cases, the enforcement and interpretation of its building and zoning codes were governmental functions of this village, from which no duty to individual members of the public arose. The Code Administrator's actions in

specifying foundation grade and lot grade, as well as swale specifications, were taken pursuant to his duties and authority for enforcement of the zoning and building codes of the village of Frankfort. In so acting, he was specifying what was necessary and required to satisfy municipal standards applying to all construction. He was not specifying what would be sufficient and adequate to insure the habitability of this particular house in these particular circumstances. He was not guaranteeing or asserting that the municipality's requirements were sufficient to solve any potential drainage problem with this particular home. In adopting and enforcing building requirements a municipality is not warranting to a subsequent purchaser that its requirements will ensure construction of a habitable building, regardless of surrounding circumstances. The ultimate responsibility for the engineering soundness of a building in particular circumstances lies with the builder, and one of the circumstances to be considered in meeting that responsibility is applicable zoning and building requirements. The actions of the Code Administrator in specifying requirements for construction to the builder herein were in fulfillment of the same duties which he performs for others in the general public in similar circumstances. He was interpreting and enforcing the applicable rules and regulations governing construction within the village. Therefore, no duty arose in relation to these plaintiffs such that liability may be imposed upon the municipality when those requirements do not insure a habitable building.

With respect to the village's action in 1978, wherein a crew from the village made changes in the drainage swale, in an attempt to cure the water problem, it is a different situation. In this context, the village, both in specifying design and undertaking construction, was not enforcing general rules and regulations applying to the general public as a whole. It was responding affirmatively to a set of circumstances unique to this property and to the specific problem of water damage to plaintiffs' home. Furthermore, its employees undertook the construction of the swale modification. These actions were not pursuant to governmental functions attendant to building and code enforcement duties. However, we need not determine the extent of liability or whether the voluntary nature of the work had any effect upon liability, for the evidence clearly establishes that the work had no effect upon the problem. There was no testimony that the 1978 construction work by municipal employees had any effect upon the pre-existing water damage to plaintiffs' property. Thus, no proximate cause was established between that 1978 work by the village and the damages complained of by plaintiffs.

■ Finally, we reject plaintiffs' contention that the village is liable for negligence because of the defects in the construction of the drainage system, under *Elliott v. Nordlof* (1967), 83 Ill. App. 2d 279, 227 N.E.2d 547, and *Burford v. Village of La Grange* (1967), 90 Ill. App. 2d 210, 234 N.E.2d 120. The decisions in those cases, and the rule relied upon, were based upon acts of a municipality in relation to municipal streets and sewers, that is for property for which the city had assumed responsibility. Where a city constructs a sewer system, or assumes maintenance responsibilities thereon, it is acting in a ministerial capacity and has been held liable for failure to perform up to standards applied to private parties in similar circumstances. In the instant case, the drainage swale and subdivision system was not located upon village property, was not a public improvement undertaken by the village, and the village had not assumed responsibility for the construction and maintenance of the system. The village's actions respecting the drainage swale, except those without effect in 1978, were taken pursuant to its governmental duties and were not such as to impose liability upon it when the drainage swale failed to perform adequately so as to prevent injury to plaintiffs' property.

In summary, we affirm the judgment as to the architect Hamilton, but reverse as to the village of Frankfort. We would also add, consistent with the tenor of our previous remarks, that the builder of residential property has ultimate responsibility for the habitability of his product. Where it does not meet habitability standards, the purchaser has an action against him. However, in the instant case, the jury found in favor of the defendant builder, and no cross-appeal from that judgment is before us at this time.

Reversed in part and affirmed in part.

SCOTT, J., concurs.

PRESIDING JUSTICE STOUDER, concurring in part and dissenting in part:

I concur with the majority in its decision as to the nonliability of the village. I do not agree however that Hamilton can be held liable under a negligence theory because I do not believe that he breached any duty to the plaintiff. Like the majority, I agree that the privity requirement of traditional tort analysis has been discarded in favor of an analysis of the scope of duty. Where I take exception with the majority is in its analysis of the duty owed to plaintiff. Although *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, may in fact have fi-

nally discarded the general rule of nonliability of an independent contractor as the majority suggests, the further analysis of the Illinois Supreme Court regarding the duty owed is directly applicable to this case and mandates the opposite conclusion reached by the majority.

In *Hunt* the defendant designed, manufactured and installed road signs which plaintiff argued were installed too close to the roadside, were not of a modern construction and should have had "break-away" posts. The Illinois Supreme Court found that

> "An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them." 74 Ill. 2d 203, 209, 384 N.E.2d 368, 371.

Hamilton's contract with Krusemark, the developer, called upon him to design and provide working drawings of a surface water drainage system for the subdivision which met the applicable code requirements of the village. There was no contention by any party that Hamilton's plans failed to meet the requirements of the village's ordinances which did not require specifications indicating the shape or depth of any channel. Furthermore, the depth and shape of a channel would be affected by adjacent development, and it was therefore impracticable to include these specifics in the plans prepared by Hamilton. Therefore, Hamilton had no duty other than to conform his plans to the applicable village ordinances and the record indicates that he did just that. Hamilton was not liable as a matter of law, and the court should have entered a judgment for defendant Hamilton notwithstanding the verdict of the jury.

Since in my view the trial court should have granted a judgment notwithstanding the verdict in favor of both the village and the engineer, it becomes unnecessary to discuss the issue relating to the nature of the damages and the circumstances under which economic loss may be recovered. I have some doubt as to the manner in which this issue was resolved by the majority, since it would appear that different rules should be applicable to the recovery from the defendant builder and from the other parties to the action.