**INTAMIN, INC., Plaintiff,**

v.

**FIGLEY–WRIGHT CONTRACTORS, INC., et al., Defendants.**

**FIGLEY–WRIGHT CONTRACTORS, INC., Third Party Plaintiffs,**

v.

**CURTIS D. SUMMERS, INC., et al., Third Party Defendants.**

**No. 83 C 9387.**

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1985.

---

See also 595 F.Supp. 1348 and 595 F.Supp. 1350.

Thomas Tobin, Michael J. Wagner, Andrew J. Boling, Baker & McKenzie, Chicago, Ill., for defendants Figley-Wright Contractors.

D. Patterson Gloor, Mary K. Finley, Cassiday, Schade & Gloor, Chicago, Ill., for third party defendants Curtis D. Summers, Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Intamin, Inc. ("Intamin") has filed what is now a six-count Amended Complaint (the "Complaint")[1] against Figley-Wright Contractors, Inc. ("Figley-Wright") and related parties, charging defendants' breach of contract, breach of express and implied warranties, breach of contractual indemnity and negligence—all arising out of the construction of a roller coaster at Marriott's Great America Theme Park ("Great America") in Gurnee, Illinois. Figley-Wright has in turn filed a two-count Third Party Complaint (the "F–W Complaint") against Curtis D. Summers, Inc. ("Summers"), seeking recovery via contribution and contractual indemnity. Summers now moves to dismiss the F–W Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons stated in this memorandum opinion

**1.** Before amendment the Complaint included all the claims identified in the text except one for negligence. On November 13, 1984 an Amended Complaint was filed, adding Count VI sounding in negligence.

**2.** Citations to the Act will simply take the form "Act §__," employing the paragraph numbering

and order, the motion is granted in part and denied in part.

### Background

On June 2, 1980 Intamin contracted with Marriott Corporation ("Marriott") to provide a roller coaster for Marriott at Great America (Complaint Ex. A). Intamin in turn contracted with Summers to provide all professional engineering design services (Complaint Ex. C, Art. 2) and with Figley-Wright to construct the roller coaster (Complaint Ex. B, Art. 2). No contractual relationship existed between Figley-Wright and Summers.

After the roller coaster had been constructed and put into operation, Marriott discovered design and construction defects and required Intamin to make repairs under the warranty terms of the Marriott-Intamin contract. Intamin in turn sought compensation from Summers and Figley-Wright. On July 10, 1984 Intamin entered into a settlement agreement with Summers by which Intamin released all present and future claims against Summers in return for the payment of $203,820.49 (Mo. Dismiss Ex. C). In the meantime, Intamin and Figley-Wright continue to do battle here. Now Figley-Wright seeks contribution and indemnity from Summers for any liability of Figley-Wright to Intamin as determined in this action.

### Contribution

■ Section 302(a) of the Illinois Contribution Among Joint Tortfeasors Act (the "Act," Ill.Rev.Stat. ch. 70, ¶¶ 301–305)[2] provides:

Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contri-

in Chapter 70 rather than the Act's internal numbering. Though the disparity between the use of "§" and "¶" appears anomalous, that is the product of Smith-Hurd's recent shift from the former to the latter designation. When the Illinois General Assembly enacts legislation, it continues to use "§" and not "¶."

bution among them, even though judgment has not been entered against any or all of them.

Thus the Act expressly requires *each* party to the contribution action to be "subject to liability in tort" to the injured party. Figley-Wright's claim fails to meet that threshold requirement as to itself—and very possibly as to Summers as well.

1. *Summers' Potential Tort Liability To Intamin*

■ There is serious doubt whether Summers is liable in tort to Intamin. Summers argues it is not so liable because *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 86, 61 Ill.Dec. 746, 753, 435 N.E.2d 443, 450 (1982) prohibits recovery in tort for purely economic losses that result from a breach of contract. Figley-Wright counters with *Ferentchak v. Village of Frankfort,* 121 Ill.App.3d 599, 76 Ill.Dec. 950, 459 N.E.2d 1085 (3d Dist. 1984) and *Rosos Litho Supply Corp. v. Hansen,* 123 Ill.App.3d 290, 78 Ill.Dec. 447, 462 N.E.2d 566 (1st Dist.1984), which it contends create a general exception to *Moorman* for architects and engineers such as Summers.[3]

*Ferentchak* does not stand for that proposition. It permitted tort recovery against an architect for economic losses *where (and because) plaintiff had no recourse to contract remedies.* 121 Ill.App.3d at 607–08, 76 Ill.Dec. at 956–57, 459 N.E.2d at 1091–92. *Rosos Litho,* although it contains more sweeping language than *Ferentchak,* also involved a situation in which no contract remedies comparable to those in a negligence action were available against the architect. 123 Ill.App.3d at 295–96, 78 Ill.Dec. at 452–53, 462 N.E.2d at 571–72.

In contrast to the plaintiffs in *Ferentchak* and *Rosos Litho,* Intamin was specifically entitled to invoke contract remedies against Summers, and the scope of those remedies appears no narrower than those available in a tort action. That renders the Appellate Court limitations on *Moorman* questionable in terms of their applicability here. And if *Moorman* applies in undiluted form here, it precludes Intamin's tort recovery against Summers.

2. *Figley-Wright's Potential Tort Liability To Intamin*

■ But the just-completed discussion is really academic, for in any event Intamin has no tort cause of action against *Figley-Wright.* Figley-Wright apparently believes (F–W Mem. 2) Intamin's mere assertion of its Count VI negligence claim against Figley-Wright is sufficient to render the latter a joint-tortfeasor with Summers for purposes of the Act. But the Act expressly requires that each party be "subject to liability in tort," not just accused of one.

On that score, *Moorman* flatly dictates Figley-Wright's nonliability in tort to Intamin. Nor has Figley-Wright identified any exception to *Moorman* to change that result. Indeed, *Ferentchak,* 121 Ill.App.3d at 605–07, 76 Ill.Dec. at 955–56, 459 N.E.2d at 1090–91 specifically applied *Moorman* and *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) (following *Moorman* ) to reject a cause of action against a contractor (akin to Figley-Wright) while upholding one against the architect.

■ One final point should be made. Figley-Wright cannot simply lie down and play dead to Count VI, failing to contest its negligence claim in order to pass liability by way of contribution to Summers. That could not be tolerated.[4]

---

**3.** Neither litigant has discussed the choice-of-law question, simply assuming Illinois law applies. In this diversity action this Court looks to the Illinois choice-of-law rule, which in tort cases applies a "most significant contacts" approach. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). That indeed points to Illinois as the source of the substantive rules of decision here.

**4.** Thus in an odd way Figley-Wright has a disincentive to advance the normal resistance of a litigant against being sued. Nonetheless this Court will consider the future assertion by either Intamin or Figley-Wright (or both) of grounds to support the latter's tort liability to the former. That might justify the reassertion of a contribution claim—*if* Summers were also held subject to liability in tort to Intamin.

### 3. *Intamin's Settlement With Summers*

Under the Act the absence of joint tort-feasors is fatal to the contribution claim. However, in light of the parties' extensive briefing on the effect of the Intamin-Summers settlement (and because of the possibility mentioned in n. 4), some brief comments on that issue are appropriate.

Act § 302(c) permits one tortfeasor to enter into a "good faith" settlement with the injured party. Act § 302(d) says the tortfeasor who enters into such a settlement "is discharged from all liability for any contribution to any other tortfeasor." Summers contends its settlement with Intamin thus insulates it from liability for contribution to Figley-Wright.

Figley-Wright claims the settlement was not entered into in good faith because it lacked consideration, arguing:

1. Intamin had no present claim against Summers because the statute of limitations had run.

2. Although denominated a "settlement," the agreement was a sham because Intamin and Summers were insured by the same company.

Those arguments will be dealt with in turn.

(a) *Statute of Limitations.* Ill.Rev.Stat. ch. 110, ¶ 13–214 establishes a limitations period of two years from the date Intamin "knew or should reasonably have known" of the defects constituting a breach of its contract with Summers. On the current pleading motion, of course, this Court cannot determine when Intamin knew or should have known of the defects.

■ For that purpose, although there is apparently no Illinois case on point, the burden would seem to be on Figley-Wright to show a lack of good faith.[5] *Fisher v. Superior Court*, 103 Cal.App.3d 434, 447–49, 163 Cal.Rptr. 47, 56–57 (1980). And

neither *LeMaster v. Amsted Industries, Inc.*, 110 Ill.App.3d 729, 66 Ill.Dec. 454, 442 N.E.2d 1367 (5th Dist.1982) nor *Ballweg v. City of Springfield*, 130 Ill.App.3d 241, 84 Ill.Dec. 941, 473 N.E.2d 342 (4th Dist.1984) is on point, for in each instance the settled claim was "entirely without foundation" when the parties entered into their settlement agreement (in *LeMaster* because of a statutory bar against suit; in *Ballweg* because the limitations period had concededly run). That conclusively demonstrated the absence of consideration.

■ In that respect Figley-Wright has mischaracterized the real issue. Because the legal question is that of consideration or the lack of it, the issue is not whether in hindsight (as the result of a judicial determination about what Intamin "should reasonably have known") the statute of limitations had lapsed by the settlement date. Instead it would be enough if at the time of settlement Summers believed in good faith it was vulnerable to a claim by Intamin. That is consideration enough to support a settlement. In the best contract-law tradition under which courts do not measure the adequacy of consideration, this Court may not second-guess Summers as to whether the possibility of Intamin's recovery was great enough to justify the size of the settlement payment.

■ Summers also has another string to its bow. It urges even if there were arguably no consideration for settling the *current* dispute, it nevertheless received consideration in being released from potential *future* claims under the 25-year warranty clause of Paragraph I.B.7 of the Marriott-Intamin contract.[6] For current purposes that possibility need not be fully explored, but at least on the surface it appears such a release would independently

---

5. Figley-Wright tries to shift the burden to Summers by arguing the plaintiff has the burden of specifically alleging time of discovery where the statute of limitations is in issue. (Second Supp. Mem. 6–7). But that burden would fall on Intamin, not Summers, and it would apply only in an action between Intamin and Summers.

6. Ill.Rev.Stat. ch. 110, ¶ 13–214(d) extends the two-year limitation period in case of a longer contractual undertaking. Summers could have been liable in indemnity as to Marriott's claim against Intamin asserted within the much longer period defined by the Marriott-Intamin contract.

be sufficient consideration to establish a good faith settlement.

(b) *Bona Fides.* Whatever the validity of the settlement on the grounds already discussed, Figley-Wright attacks its bona fides because Intamin and Summers are insured by the same company. That raises the possibility the claimed settlement has no real-world significance, involving nothing more than a transfer from one insurance-company pocket rather than another. Summers represents (First Supp.Mem. 7–8) it paid a $15,000 deductible to its insurer as a result of the settlement. Again the full implications of the subject are inappropriate for determination now, given the non-viability of the contribution claim in all events. No ruling on the issue is therefore implied by this opinion.

### Contractual Indemnification

Count II of the F–W Complaint seeks contractual indemnification from Summers for any liability of Figley-Wright to Intamin. That claim is based on Article 6 of the "Design Agreement" between Intamin and Summers (F–W Complaint Ex. B):

> The Engineer [Summers] shall be responsible for and shall indemnify and save harmless Intamin, Marriott Corporation, and all other contractors and subcontractors of Intamin for all damage to life and property arising out of the negligent conduct of the Engineer, its subcontractors, agents or employees in connection with the services rendered by Engineer under this Agreement. The Engineer's indemnity shall not be limited to the amount of insurance coverage required to be maintained pursuant to Article 7 of this Agreement.

Summers challenges Count II as seeking to hold Summers liable for Figley-Wright's negligence. Summers correctly points out

such a reading of Article 6 would violate both:

1. Ill.Rev.Stat. ch. 29, ¶ 61, which invalidates contractual indemnification of a party against his or her own negligence; and

2. the rule of construction that a contractual indemnification provision will not be construed as indemnifying a party against his or her own negligence absent very clear language to that effect. *Davis v. Marathon Oil Co.*, 64 Ill.2d 380, 396–97, 1 Ill.Dec. 93, 100–101, 356 N.E.2d 93, 100–101 (1976) and cases there cited.

■ That however is really a strawman. Figley-Wright itself acknowledges Article 6 cannot validly be construed to embrace indemnification for its own negligence. And this opinion has already held Figley-Wright cannot be held liable to Intamin on negligence grounds anyway. Accordingly F–W Complaint Count II withstands dismissal to the extent (if any) Figley-Wright is adjudicated liable to Intamin (but not for its own negligence, whatever the rubric under which liability is established proves to be) and such liability is adjudicated to have been occasioned by Summers' negligence.[7]

### Conclusion

Figley-Wright has stated a potential claim against Summers in indemnity but not contribution. F–W Complaint Count I (but not Count II) is dismissed. Summers is ordered to answer Count II on or before February 19, 1985.[8]

---

**7.** No doubt those determinations will best be made through a special verdict under Rule 49(a) or special interrogatories under Rule 49(b).

**8.** It is obviously premature to comment on the possible effect of the Intamin-Summers settlement on any Summers liability under F–W

Complaint Count II (for example, on whether Intamin might have to restore Summers, out of the settlement payment, for any amount Summers may become obligated to pay Figley-Wright).