**INTAMIN, INC., Plaintiff,**

v.

**FIGLEY–WRIGHT CONTRACTORS, INC., et al., Defendants.**

No. 83 C 9387.

United States District Court, N.D. Illinois, E.D.

May 3, 1985.

Thomas F. Tobin, Michael J. Wagner, Baker & McKenzie, Chicago, for defendants.

D. Patterson Gloor, Mary K. Finley, Cassiday, Schade & Gloor, Chicago, for third party defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Intamin, Inc. ("Intamin") has asserted several claims—breach of contract, breach of express and implied warranties and breach of contractual indemnity—against Figley-Wright Contractors, Inc. ("Figley-Wright") and related parties, stemming from construction of a roller coaster at Marriott's Great America Theme Park ("Great America") in Gurnee, Illinois. Figley-Wright has in turn filed a Third Party Complaint against Curtis D. Summers, Inc. ("Summers"), seeking recovery via contractual indemnity. In response Summers has counterclaimed, charging Figley-Wright with negligence.

Figley-Wright now moves under Fed.R. Civ.P. ("Rule") 12(b)(6) to dismiss Summers' counterclaim. For the reasons stated in this memorandum opinion and order, the motion is granted.

### Background

On June 2, 1980 Intamin contracted with Marriott Corporation ("Marriott") to provide a roller coaster for Marriott at Great America (Complaint Ex. A). Intamin in turn contracted with Summers to provide most of the professional engineering design services (Complaint Ex. C, Art. 2)[1] and with Figley-Wright to construct the roller coaster (Complaint Ex. B, Art. 2). No contractual relationship existed between Figley-Wright and Summers.

After the roller coaster had been built and put into operation, Marriott discovered design and construction defects and required Intamin to make repairs under the warranty terms of the Marriott-Intamin contract. Intamin in turn sought compensation from Summers and Figley-Wright. On July 10, 1984 Intamin entered into a settlement agreement with Summers by which Intamin released all present and future claims against Summers in return for Summers' payment of $203,820.49.

In the meantime Figley-Wright has engaged in battle with both Intamin and Summers. In August 1984 Figley-Wright filed its Third Party Complaint seeking both contribution and indemnity from Summers for any liability of Figley-Wright to Intamin as determined in this action. On February 12, 1985 (in the "Opinion") this Court (1) dismissed Figley-Wright's contribution claim but (2) held its indemnity claim stated a cause of action for any liability of Figley-Wright to Intamin resulting from Summers' negligence. 605 F.Supp. 707 (N.D. Ill.1985).

Summers' counterclaim against Figley-Wright asserts Summers' settlement payment to Intamin covered damages caused by Figley-Wright's negligence. Summers seeks to recover that payment—or at least the portion that represents damages attributable to Figley-Wright's negligence.

Figley-Wright advances three independent grounds for dismissal:

 1. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill. Dec. 746, 435 N.E.2d 443 (1982) prohibits recovery in tort for purely economic losses of the type claimed by Summers.

 2. Figley-Wright owed no duty of care to Summers.

 3. Summers' counterclaim is an attempt to obtain indemnification for its own negligent acts.

Only the second of those has any possible merit, and it will be dealt with last. Though the last of the three is so empty as to require no real discussion at all,[2] the

---

**1.** Summers says although it was responsible for the design of structural, mechanical and electrical systems (Third Party Complaint Ex. B), Figley-Wright was responsible for the design of the "dynamic portions" of the roller coaster (Counterclaim ¶ 2).

**2.** Ironically Summers initially levelled against Figley-Wright's Third Party Complaint—and this Court found meritless—the identical attack now tendered by Figley-Wright's third argument (Opinion, 605 F.Supp. at 712). But Figley-Wright's current argument is even less worthy of

first reflects such a total disregard of this Court's prior ruling and the case law as to call for extended treatment at the outset. Maybe Figley-Wright will get the message this time.

### Recovery of Economic Losses under Moorman

Just three months ago Figley-Wright urged a distorted reading of the *Moorman* line of cases in an effort to save its contribution claim against Summers. Opinion, 605 F.Supp. at 710 explained how Figley-Wright's analysis went off the track. Oblivious to that explanation, Figley-Wright now invokes the same incorrect reading of *Moorman* to attack Summers' third party counterclaim.

■ Figley-Wright Mem. 3–10 argues *Moorman* and its progeny erect a flat bar to the recovery of economic losses in tort, with the sole exception of professional malpractice suits against architects and engineers. That contention focuses on the nature of the claim and the identity of the defendant, to the exclusion of other relevant factors. But Opinion, 605 F.Supp. at 710 explained the *Moorman* analysis turns on both the nature of the claim and the *total* relationship among the parties. *Ferentchak v. Village of Frankfort*, 121 Ill. App.3d 599, 607–08, 76 Ill.Dec. 950, 956–57, 459 N.E.2d 1085, 1091–92 (3d Dist.1984) teaches *Moorman* bars the recovery of purely economic losses in tort *only* when the plaintiff has recourse to contractual remedies.

*Moorman* itself involved claims sounding in both contract and tort against a manufacturer that had sold plaintiff a defective storage tank. As the Illinois Supreme Court put it, the claims involved nothing more than "a purchaser's disappointed expectations" remediable in the realm of contract (91 Ill.2d at 86, 61 Ill.Dec. at 753, 435 N.E.2d at 450):

consideration, for Summers' counterclaim—although concededly cast in very broad terms—alleges Fegley-Wright's negligence in three respects for which Figley-Wright rather than Summers was responsible:

 1. faulty construction of the track and supports;

Plaintiff suffered a commercial loss of the type that the law of warranty is designed to protect.

In affirming dismissal of the tort claims, the Supreme Court stressed the parties' relationship of contractual privity and the availability of contract remedies. Indeed, a principal basis of the court's decision was its stated desire not to interfere with the system of warranty remedies established by the Uniform Commercial Code (91 Ill.2d at 88, 61 Ill.Dec. at 755, 435 N.E.2d at 452):

As discussed above, the UCC provides the proper framework for a purchaser's recovery of economic losses. Allowing an aggrieved party to recover under a negligence theory for solely economic loss would constitute an unwarranted infringement upon the scheme provided by the UCC.

*Moorman* is not the last word from the Illinois Supreme Court. Twice since then that Court has barred recovery of purely economic losses in tort, and in each case the Court held plaintiff should have invoked warranty rather than tort remedies. *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982) affirmed dismissal of the plaintiff homeowner's tort claim against the builder for construction defects but left intact plaintiff's warranty claim (92 Ill.2d at 178, 65 Ill.Dec. at 414, 441 N.E.2d at 327) (quoting *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo.1978), emphasis in original):

[W]here mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon.

Similarly *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.*, 96 Ill.2d 150, 70 Ill.Dec. 251, 449 N.E.2d 125 (1983) barred a condominium owners' asso-

 2. knowing installation of defective materials; and

 3. improper design of dynamic components.

ciation's tort claim against the condominium builder for construction defects, where the owners could have invoked warranty remedies had they not waived those remedies through a procedural default.

Neither in *Moorman* nor in the later cases has the Supreme Court considered a tort claim for purely economic loss by a plaintiff whose lack of interrelationship with the defendant precludes contract or warranty remedies. But the Illinois Appellate Court faced just such a claim in *Ferentchak* and concluded it was *not* barred by *Moorman* (121 Ill.App.3d at 606, 76 Ill.Dec. at 955–56, 459 N.E.2d at 1090–91):

> We read *Moorman* and subsequent cases to establish that economic losses are not recoverable in tort against a defendant where the injuries caused by that defendant relate directly to plaintiff's reasonable commercial expectations respecting the defendant's actions *and* where plaintiff has or had appropriate and adequate contract or warranty actions as against the defendant for such harm. In such circumstances, and where the injury is to the item supplied or produced by that defendant, contractual benefit-of-bargain expectations damages are the appropriate measure of recovery. However, the same economic losses are recoverable in tort, as against defendants who by their own negligence, as measured by traditional tort analysis, have caused the injuries and against whom no contract or warranty remedy is available. As to these defendants, when unconnected with the contract-warranty defendant, the harm caused by them is not related to the plaintiff's commercial expectations, but to traditional societal expectations and conduct.

All relevant post-*Ferentchak* Appellate Court cases have cited it with approval and adopted its rule that tort claims for economic loss may be pursued when no contract or warranty remedy is available. *Scott and Fetzer Co. v. Montgomery Ward & Co.*, 129 Ill.App.3d 1011, 1017, 85 Ill.Dec. 53, 58–59, 473 N.E.2d 421, 426–27 (1st Dist.1984) ("economic loss doctrine also does not bar recovery here because there were no commercial dealings between [defendant] and the [plaintiff] adjacent tenants [quoting at length the same *Ferentchak* language quoted in this opinion] ... and thus there are no contractual nor warranty remedies available to the tenants"); *Reeder v. Old Oak Town Center*, 124 Ill. App.3d 1045, 1048–49, 80 Ill.Dec. 322, 325–26, 465 N.E.2d 113, 116–17 (3d Dist.1984) (also quoting and following the same *Ferentchak* rationale); *Rosos Litho Supply Corp. v. Hansen*, 123 Ill.App.3d 290, 295–96, 78 Ill.Dec. 447, 452–453, 462 N.E.2d 566, 571–72 (1st Dist.1984).

*Bates & Rogers Construction Corp. v. North Shore Sanitary District*, 128 Ill. App.3d 962, 84 Ill.Dec. 149, 471 N.E.2d 915 (2d Dist.1984) is not—as Figley-Wright would have it—to the contrary. *Bates & Rogers* outlawed a contractor's tort claim against an architect with whom the contractor was not in privity, but the court emphasized the contractor could seek warranty relief against the project owner who hired the architect (128 Ill.App.3d at 972–73, 84 Ill.Dec. at 156, 471 N.E.2d at 922).

Figley-Wright does not seem to understand that it is not "the mere fortuity of contractual relief's unavailability" (Mem. 7) that renders *Moorman* inapplicable. *Moorman* was not an arbitrary decision by the Illinois Supreme Court to wipe out a remedy—one allowing tort recovery for economic losses—for the sheer sake of doing so. Rather *Moorman* reflected a judgment that parties who have shaped an economic transaction in contractual terms should not be permitted to shift their voluntarily-assumed risks by imposing an overlay of tort law concepts (with their quite different allocations of risk). Post-*Moorman* cases have equated the availability of warranty remedies with contract rights for that purpose. And the several Appellate Court decisions discussed in this opinion have sensibly *allowed* tort recovery where that critical ingredient of contractual or warranty remedies was lacking.

 In this diversity action, this Court is controlled by the accurate reading of *Moor-*

*man* reflected in *Ferentchak* and those succeeding Illinois Appellate Court decisions.[3] Under those readings *Moorman* clearly poses no bar to Summers' counterclaim. Summers and Figley-Wright have no direct contractual relationship, and no system of warranties is available to Summers by virtue of Summers' and Figley-Wright's independent relationships with Intamin. That asserted basis for Figley-Wright's motion is no better now than it was when first rejected by the Opinion.

### Existence (or Lack) of Elements of a Negligence Claim

Summers has not, however, dodged Figley-Wright's third bullet. Though the counterclaim asserts (in the most conclusory terms) a Figley-Wright duty of care running to Summers in connection with Figley-Wright's performance of its contract with Intamin, it has not identified just how that duty would arise. Moreover it has also not identified just how (even assuming such a duty of care) Figley-Wright's negligence could be a proximate cause of Summers' claimed injury.

Summers cites *Normoyle-Berg & Associates, Inc. v. Village of Deer Creek*, 39 Ill.App.3d 744, 350 N.E.2d 559 (3d Dist. 1976) for the proposition that Figley-Wright owed Summers a duty of care. In *Normoyle-Berg* the court held a supervising engineer on a construction project owes a duty to the general contractor to avoid causing the contractor extra expenses in the completion of the project. That duty exists because of the foreseeability of harm to the contractor from the engineer's negligence (39 Ill.App.3d at 746, 350 N.E.2d at 561):

> A supervising engineer must be held to know that a general contractor will be involved in a project and will be directly affected by the conduct of the engineer. This relationship of supervising engineer and general contractor gives rise to a

duty of care on the part of each party to the other.

While that language could support the existence of a duty owed by Summers to Figley-Wright, it does not necessarily run the other way (as it did in the *Normoyle-Berg* situation).

■ It is axiomatic that no legal duty can arise unless harm to the plaintiff resulting from defendant's actions is reasonably foreseeable. *Renslow v. Mennonite Hospital*, 67 Ill.2d 348, 354–55, 10 Ill.Dec. 484, 487, 367 N.E.2d 1250, 1253 (1977). *Normoyle-Berg* recognizes it is not only foreseeable but likely that a contractor's performance will be detrimentally affected when an architect or engineer errs in drafting plans or supervising construction.

■ But Summers must establish the converse, and it has not essayed to do so either in its counterclaim or in its supporting memorandum. Ordinarily the performance (and hence the exposure to liability) of an architect responsible only for design (and not ongoing supervision), or a design engineer (as contrasted with the supervising engineer dealt with in *Normoyle-Berg*), depends on no one else. They represent the first links in the construction chain. Others implement their plans, but if the plans are properly prepared no negligence in their execution by the contractor can reflect back and impose liability on the professional who generated the plans.

It is true (or at least Summers' counterclaim, which must be accepted as true, says) part of the design responsibility here was undertaken by Figley-Wright. But Summers has offered no hint of how Figley-Wright's flawed performance could have impacted Summers. In conventional tort-law duty-of-care terms, it has not indicated how Figley-Wright could have foreseen any economic harm to Summers from Figley-Wright's negligence.

Relatedly, Summers has also not suggested how Figley-Wright's negligence could be a proximate cause of Summers'

---

3. As *Figley-Wright* pointed out, the Illinois Supreme Court took *Ferentchak* on appeal, but its resolution of the case made it unnecessary to decide the question posed here. 105 Ill.2d 474, 479, 86 Ill.Dec. 443, 475 N.E.2d 822 (1985). Absent authoritative word from the Supreme Court, this Court is constrained to follow the just-completed exegesis.

damages, as represented by Summers' settlement payment to Intamin covering the cost of repairs. Neither Intamin nor Figley-Wright could force Summers to pay for Figley-Wright's negligence (except of course to the extent, if any, such negligence caused Summers to breach its duty to Intamin). Certainly Summers cannot recover from Figley-Wright to the extent Summers may have voluntarily undertaken to pay damages to Intamin in excess of Summers' own share. In that event Summers' opting to shoulder more than its share of damages, rather than to assert its defense in a court of law, would appear to be a self-inflicted wound—again in conventional tort-law terms, would be an intervening cause of Summers' own injury sufficient to cut off Figley-Wright's liability for those damages.

That issue need not however be resolved here. Because Summers has not demonstrated some rational basis for its conclusionary duty-of-care allegations, its counterclaim cannot survive in its present form.

### Conclusion

Although Summers' negligence counterclaim is clearly not barred by *Moorman*, it is rendered defective by the absence of any showing of a duty of care owed by Figley-Wright to Summers. Summers' counterclaim is therefore dismissed.