(Nos. 59817, 59819 cons

PHILIP J. FERENTCHAK *et al.*, Appellees and Appellants, v. THE VILLAGE OF FRANKFORT *et al.*, Appellees (Robert Hamilton, Appellant).

*Opinion filed January 23, 1985.—Rehearing denied March 29, 1985.*

Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet (Robert J. Baron and Richard W. Froelich, of counsel), for appellant Robert E. Hamilton.

Dunn, Leinenweber & Dunn, Ltd., of Joliet (Harry D. Leinenweber, of counsel), for appellees and appellants Philip J. Ferentchak *et al.*

McKenna, Storer, Rowe, White & Farrug, of Wheaton (Mark A. Pheanis and John C. Bartler, of counsel), for appellee Village of Frankfort.

Fohrman, Lurie, Sklar & Simon, Ltd., of Chicago (Steven G.M. Stein, Mark C. Friedlander, and Paul M. Lauri, of counsel), for *amici curiae* American Institute of Architects and Illinois Council of Architects.

Kirkland & Ellis, of Chicago (Philip F. Purcell, James N. Nowacki, and Mark A. Orloff, of counsel), for *amicus curiae* Skidmore, Owings & Merrill.

O'Brien, O'Rourke, Hogan & McNulty, of Chicago (LaDonna M. Loitz and Donald V. O'Brien, of counsel, and Anne E. Schless, law student), for *amici curiae* Associated General Contractors of Illinois *et al.*

JUSTICE SIMON delivered the opinion of the court:

This appeal raises two questions: (i) whether a civil engineer can be held liable for failure to establish minimum foundation grade levels for the plaintiffs' home when the engineer drew up surface water drainage plans for a custom home subdivision at the request, not of the plaintiffs, but of the subdivision developer; and (ii) whether a village can be held accountable for damage to the plaintiffs' home when its general rules and regulations for construction were relied upon at the time the home was built.

The plaintiffs, Philip and Caroline Ferentchak, sought recovery against the defendants, Robert Hamilton (Hamilton) and the village of Frankfort (the village) in the circuit court of Will County for damage to their home caused by flooding. The cause of the water entering their home was that the foundation grade level was too low to prevent this from happening. Although the foundation grade level was too low to prevent water seepage, it was not in violation of the village's minimum height regulation.

Hamilton first became involved with the subdivision in which the plaintiffs' property is located in 1971 when Albert Krusemark (Krusemark), a land developer, engaged Hamilton, a licensed Illinois civil engineer, to design and observe the construction of the subdivision's surface water drainage system. The record indicates that

this contract did not require Hamilton to set the foundation grade levels for each lot. Hamilton completed the design of the system, and the plans were accepted by Krusemark and submitted by him to the village for approval. They received village approval, and the subdivision plat was recorded in 1973 after Hamilton, acting as the village engineer, informed the village that the plans he drafted and which were submitted by Krusemark complied in all respects with the village's building and zoning codes. No claim is made that Hamilton's plans did not meet the village requirements.

The plans developed by Hamilton for surface water drainage in the subdivision included a 20-foot-wide channel easement located between the southern boundary of lot 81, the plaintiffs' property, and the northern boundary of lot 82. The plans did not include any specifications as to the shape or depth of the proposed channel, and the approved plat was merely marked in the appropriate place with the designation "channel easement." Neither Hamilton's contract with Krusemark nor the village's ordinances required that such specifications be included in the plat.

Several lots of the subdivision, including lot 81 of the subdivision, were sold by Krusemark to Lidio Filippo (Filippo) in 1975. Filippo applied for and received a building permit to construct a single-family residence on lot 81. At that time, Filippo was informed of the village's requirements for home building by William Knippel (Knippel), the code administrator for the village. These included minimum levels for the foundation grade. Knippel testified that Filippo was also told that this was only a minimum and that the final decision as to the foundation grade level was left to the discretion of the builder. Prior to the pouring of the footings, Knippel visited the construction site, directed that the foundation be raised as much as possible, and approved construction. The home

was built, and it received the village's approval.

After completing the home in August of 1976, Filippo sold it to the plaintiffs. The plaintiffs were unable to occupy it immediately because of the village's refusal to issue an occupancy permit based on Filippo's failure to create a drainage swale as indicated on the filed and approved plat. Filippo complied with the village's request and received assistance with its design from Bruce Hamilton, a son and employee of Robert Hamilton. After completion of the swale, the village issued the occupancy permit and the plaintiffs moved into the home.

In January 1977 the plaintiffs first noticed the problem that gave rise to this proceeding. Water was accumulating in their back yard and eventually entered their basement. Attempts to solve the problem, including basement waterproofing and modifications to the swale during the following summer, were unsuccessful.

The plaintiffs brought a negligence action against the village, Hamilton, Krusemark, and Filippo. The jury concluded that the village and Hamilton were liable, but that Filippo was not. Krusemark had been granted summary judgment at the close of the plaintiffs' case. Hamilton and the village appealed the jury findings, but the plaintiffs did not appeal the jury verdict in favor of Filippo or the summary judgment in favor of Krusemark. The appellate court affirmed the judgment against Hamilton, but reversed as to the village. (121 Ill. App. 3d 599.) Both Hamilton and the plaintiffs filed petitions for leave to appeal, which we granted (94 Ill. 2d R. 315(a)) and consolidated.

Hamilton's plans for the drainage system did not set a foundation grade elevation for any of the lots in the subdivision. At trial a civil engineer called by the plaintiff as an expert testified that it was Hamilton's professional obligation to incorporate this information on the plat. Hamilton testified, however, that the omission was

intentional because (i) the planned individual development of each lot in the subdivision would require customizing the channel to take account of the runoff pattern created by the homes, (ii) his contract with Krusemark did not require him to set the foundation levels, and (iii) the foundation levels would vary according to the placement, type and size of the custom-built homes placed on the individual lots.

Hamilton first argues that his responsibility to the plaintiffs is limited to his duty under his contract with Krusemark. He points to their oral arrangement which, he contends, did not require him to set foundation levels for the individual lots in the Krusemark subdivision. Hamilton concludes that because his contract did not require him to establish the foundation levels on the individual lots, he cannot be held liable in tort.

Relying on our decisions in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, and *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, Hamilton also argues that the plaintiffs can recover only in a contract action for damage to their home. Hamilton contends that those cases bar the plaintiffs' action in tort because they seek damages for "economic loss." Because of our resolution of the duty requirement, however, it is unnecessary to review the appellate court's resolution of this contention.

Hamilton relies on this court's decision in *Hunt v. Blasius* (1978), 74 Ill. 2d 203, which held that an independent contractor who "merely *** carries out the specifications provided him *** owes no duty to third persons" to pass on the appropriateness of the plans unless "they were so obviously dangerous that no competent contractor would follow them." (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 209.) Hamilton concludes that he is not responsible to the plaintiffs because they were third

persons and he merely followed Krusemark's instructions. *Hunt*, though, is different from this case, for Hamilton was not following the design of Krusemark, but instead was creating one. Therefore, *Hunt* does not support Hamilton's position in this case.

As in any action for negligent conduct, the plaintiffs must establish that Hamilton had a duty to conform to a certain standard of conduct, that he failed to meet that standard, and that his failure was the proximate or legal cause of the plaintiffs' damage. (See, *e.g., Town of Thornton v. Winterhoff* (1950), 406 Ill. 113, 119; Prosser, Torts sec. 30, at 143 (4th ed. 1971).) The first question to be addressed, therefore, is whether Hamilton had a legal duty to set the foundation grade levels. Whether there was a legal duty in this case is a question of law that must be determined by this court. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26.) " 'The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than forseeability that may condition a judge's imposing or not imposing a duty in the particular case ***.' " (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375, citing Green, *Forseeability in Negligence Law,* 61 Colum. L. Rev. 1401, 1418 (1961).) Once a judge has determined that there is a duty, it then becomes the jury's responsibility to decide whether that duty was breached. Based upon the relationship of the parties, we conclude that Hamilton owed no legal duty to set the plaintiffs' foundation grade elevation. Absent this duty, Hamilton cannot be found liable, and his motion for a directed verdict at the close of the plaintiffs' case should have been granted.

The contractual agreement between Hamilton and Krusemark did not create a duty. The evidence indicates that Hamilton was not asked by Krusemark to set the foundation grade levels. On the contrary, Krusemark, as

developer of the subdivision, retained control of what was built on the individual lots by providing, in the recorded "declaration of covenants, conditions, restrictions, reservations, equitable servitudes, grants and easements" submitted to the village, that an architectural committee would oversee this work.

"THE COMMITTEE SHALL HAVE THE UNRESTRICTED RIGHT TO PREVENT THE BUILDING OF AND TO DISAPPROVE OF ANY CONSTRUCTION PLANS SUBMITTED TO IT AS AFORESAID IF, IN THE SOLE OPINION OF THE COMMITTEE:

(d) *** THE CONSTRUCTION PLANS OR ANY MATERIAL USED ON THE EXTERIOR OF THE BUILDING OR *THE FINISHED GROUND ELEVATIONS OF THE FOUNDATIONS* OR THE LOCATION OF THE BUILDING WITH RESPECT TO THE TOPOGRAPHY OF THE LAND TO BE CONTRARY TO THE SPIRIT OR INTENT OF THOSE CONDITIONS OR RESTRICTIONS ***." (Emphasis added.)

Hamilton's reliance on his contractual obligation, which did not require that he set the foundation grade levels, is not misplaced even though the committee was never formed and Krusemark alone reviewed the designs of the individual homes. Moreover, Krusemark accepted Hamilton's work and filed it with the village even though it did not indicate grade levels for the individual plots. We conclude, therefore, that Hamilton did not have a contractual duty to set the foundation levels.

The plaintiffs nevertheless contend that Hamilton's duty arises from his professional responsibility as a registered civil engineer. They point to decisions of the appellate court which require that engineers exercise the degree of care and skill ordinarily required of other civil engineers in the community. (See, *e.g., Mississippi Meadows, Inc. v. Hodson* (1973), 13 Ill. App. 3d 24; *Bates & Rogers Construction Corp. v. North Shore Sani-*

*tary District* (1980), 92 Ill. App. 3d 90.) Relying on the testimony of the civil engineer who stated that Hamilton should have incorporated the foundation grade elevations on the plat, the plaintiffs argue that Hamilton did not exercise the degree of care and skill commonly expected from other civil engineers.

The degree of skill and care required of Hamilton in this situation is dependant on his contractual obligation to Krusemark. "The scope of that duty, although based upon tort rather than contract, is nevertheless defined by the *** contract" between the engineer and the developer. (*Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 97.) Expert testimony confirms our conclusion that Hamilton, regardless of the conclusion expressed by the plaintiffs' witness, was not in a position to set the foundation elevations for the individual lots at the time he developed the water drainage plans. Testimony by Hamilton's expert witnesses contradicted the assertion that there was a uniform practice among civil engineers in Will County which required the designer of the water drainage system to set foundation levels for each lot. In fact, evidence presented at trial showed that foundation grade elevations were set for each lot in a subdivision only when tract housing, financed by Federal Housing Authority funds, was to be constructed. Hamilton did not know what type of custom houses were to be built on each lot. Under these circumstances, he could not be expected to set these grade elevations and his reliance on the architect, builder or architectural committee to set the foundation levels was proper.

Neither party has cited any case law relevant to this issue, and we have not found any. Taking account of all of the facts, we are of the opinion that a civil engineer who obligates himself to develop the water drainage system is not required to set the foundation grade eleva-

tions for individual lots on which custom-built houses are to be constructed, absent a specific contractual commitment. It would be unreasonable to impose this obligation, absent such an agreement, when the engineer does not have adequate information with respect to the type of structures to be erected to enable him to set the foundation levels accurately. Instead, the architect or builder of the individual home is best suited in this type of situation to establish the proper foundation level, and that is where the responsibility should rest. *Cf.* American Institute of Architects, Architect's Handbook of Professional Practice: Interprofessional Agreements 5—8 (1975) (placing controlling responsibility on the architect while strictly limiting the engineer's to the contract).

The plaintiffs also claim that Hamilton's failure to establish the exact dimensions of the channel easement between lots 81 and 82 was professional malpractice. Just as Hamilton could not be expected to set foundation levels, he could not be expected to set the exact size of the swale designated on the subdivision plat. The direction and amount of runoff would certainly be affected by the size and shape of the homes built on the individual lots in the subdivision. Hamilton, therefore, did not have a duty to set the exact dimensions of the channel easement. Consequently, the circuit and appellate courts' decisions must be reversed.

The plaintiffs argue that the village is liable because it actively enforced regulations while Filippo was engaged in building the plaintiffs' home. They suggest that the actions of Knippel, the village's code administrator, are analogous to the situation this court encountered in *Greene v. City of Chicago* (1978), 73 Ill. 2d 100. *Greene* held that when a city takes affirmative steps to provide safety equipment, the city is liable for deficient or inadequate protection which causes injury to a plaintiff. The plaintiffs contend that a similar rule is required when a

village affirmatively enforces building regulations.

While the plaintiffs admit that their case is not exactly the same as *Greene*, they maintain that when the village " 'assumes to act, even though gratuitously, [it] may thereby become subject to the duty of acting carefully ***.' " (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, quoting from *Glanzer v. Shepard* (1922), 233 N.Y. 236, 239, 135 N.E. 275, 276.) They point to Knippel's participation in the building of the home, including (i) informing Filippo that the village had a minimum height for the foundation, (ii) inspecting the construction site prior to the pouring of the foundation, and (iii) telling Filippo that an occupancy permit would not be issued until a swale was completed. They conclude that these affirmative steps by the village require a result similar to the one in *Greene*.

The plaintiffs' claim against the village is not well founded because they fail to establish that the village had any duty to set foundation levels. Absent this essential element, the plaintiffs cannot maintain an action in tort against the village. The village does not have a duty to the plaintiffs merely because it enforces its building code requirements. In *Greene*, this court was faced with a village's election to install street lamps. These lamps provided inadequate lighting. *Greene* held that once the municipality decides to maintain lighting, it has a duty to provide sufficient lighting to warn the public of any danger on the street. This case, on the other hand, is different because the village's actions were limited to observing the construction of the house, requiring that the minimum requirements of its code were satisfied, and suggesting alterations to the house's design to meet those required minimums. Its conduct is considerably different from what was presented in *Greene* for the reason that the village did not set out to solve a specific problem. It attempted only to enforce minimum safety

standards for homes built in its community.

The Minnesota Supreme Court faced a similar problem in *Hoffert v. Owatonna Inn Towne Motel, Inc.* (1972), 293 Minn. 220, 199 N.W.2d 158, when the plaintiffs claimed that a city was negligent when it issued a building permit authorizing remodeling of a motel in a manner that violated the city's building code. The Minnesota Supreme Court dismissed the complaint because the plaintiffs failed to establish any duty on the part of the city toward the plaintiffs.

> "Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises." (*Hoffert v. Owatonna Inn Towne Motel, Inc.* (1972), 293 Minn. 220, 223, 199 N.W.2d 158, 160.)

Passive public protection as opposed to active individual assistance, then, requires that we dismiss the plaintiffs' action against the village.

The plaintiffs' tort actions against Hamilton and the village are not supported by any legal duties. Accordingly, the appellate court is affirmed insofar as it reversed the judgment against the village and reversed insofar as it affirmed the judgment against Hamilton. The judgment of the circuit court as to Hamilton and the village is reversed.

*Appellate court affirmed in part and reversed in part; circuit court reversed.*