DENNIS L. SWAW *et al.*, Plaintiffs-Appellants, v. RAYMOND H. ORTELL *et al.*, Defendants (Presley-Chicago, Inc., a/k/a Allied-Presley Company *et al.*, Defendants-Appellees).

First District (4th Division) No. 82—2345

Opinion filed December 20, 1984.—Modified on denial of rehearing October 24, 1985.

Chester A. Lizak, of Di Monte & Lizak, of Chicago, for appellants.

Stuart M. Widman and Wendy B. Kahn, of Much, Shelist, Freed, Denenberg, Ament & Eiger, of Chicago, for appellee Presley-Chicago, Inc.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kevin R. Sido, Stephen R. Swofford, and Edward M. Crane, of counsel), for appellee R.W. Robinson & Associates.

Mitchell, Russell & Kelly, of Chicago (Thomas J. Russell and Cyril J. Watson, of counsel), for appellee Clyde D. Sana.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Shaun McParland, of counsel), for appellee Lloyd M. David.

Horace W. Jordan, of Van Duzer, Gershon, Jordan & Petersen, of Chicago, and Edwin J. Richardson, of Brunswick, Richardson & Pinzino, of Blue Island, for appellee Village of Tinley Park.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Dennis and Melissa Swaw, sued several defendants seeking to recover on various theories for losses suffered when their home became uninhabitable due to structural defects. Plaintiffs filed their initial complaint on May 30, 1979, a first amended complaint on April 29, 1981, and a second amended complaint on August 25, 1981. Various defendants filed a section 45 motion (Ill. Rev. Stat. 1979, ch. 110, par. 45), now codified as section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), requesting the court to dismiss them as to the second amended complaint. The court, on March 29, 1982, granted motions to dismiss the actions against defendants Presley, David, R.W. Robinson, Sana, and Tinley Park. On August 25, 1982, the trial court entered an order (1) denying plaintiffs' request to vacate the order dismissing the above-mentioned defendants, (2) denying plaintiffs leave to amend their second amended complaint to file additional counts against defendants David and Salisbury, and (3) denying plaintiffs leave to file a third amended complaint.

Plaintiffs appeal from the trial court's order of August 25, 1982, and present the following issues for review: (1) whether plaintiffs in counts V, IX, X, and XII state a cause of action in negligence against Presley, David, Tinley Park, and R.W. Robinson, respectively; (2) whether the statute of limitations bars plaintiffs' actions against Presley, David, Tinley Park, and R.W. Robinson; (3) whether plaintiffs in count VI state a cause of action against Presley for breach of an implied warranty of habitability; (4) whether plaintiffs in count VII state a cause of action against Presley for breach of an express warranty of habitability; (5) whether plaintiffs in count IV state a cause of action against Sana for breach of a broker's duty to disclose material knowledge to a purchaser; and (6) whether the trial court abused its discretion in (a) denying plaintiffs leave to amend their second amended complaint to file additional counts against David, and (b) denying plaintiffs leave to file a third amended complaint.

We affirm in part and reverse in part and remand.

We note that only the counts listed in plaintiffs' second amended complaint are before us. Plaintiffs have waived any objections to the trial court's rulings on former complaints filed by them. *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96

Ill. 2d 150, 153-54, 449 N.E.2d 125, 126.

The counts of the second amended complaint presented for review by plaintiffs are summarized as follows:

| COUNT | DEFENDANT | THEORY OF RECOVERY |
|-------|-----------|--------------------|
| IV | Sana | Breach of broker's duty to disclose |
| V | Presley | Negligence—negligent in constructing the house |
| VI | Presley | Implied warranty of habitability |
| VII | Presley | Express warranty of habitability |
| IX | David | Negligence—negligent in analyzing soil at the site where the house was built |
| X | Tinley Park | Negligence—negligent in enforcing its building codes |
| XII | R.W. Robinson | Negligence—negligent in conducting soil tests at the site where house was built. |

The record indicates that in 1978 plaintiffs purchased a house in the Bremen-Towne estates subdivision in Tinley Park from Raymond and Judith Ortell. Within a few months of purchasing the house, plaintiffs noticed cracks in the walls and foundation and also that the floors were sinking. The house was built in 1971 by Allied Homes, Inc. Presley-Chicago, Inc. (Presley), a defendant herein, is the successor in interest to Allied Homes as contractor and developer of residential dwellings. (For purposes of this litigation, Allied and Presley are one and the same.) Allied hired R.W. Robinson, a defendant herein, prior to development of the subject real estate to perform various tests on the soil to determine whether the area was suitable for the construction of residential dwellings. Shortly after the house was built, it became apparent that serious structural and foundation problems existed. Allied signed a contract for sale of the house in 1971. That contract was rescinded the same year because of the structural and foundation problems. Allied remained in possession of the house. Allied attempted to rectify the problems. The village of Tinley Park, a defendant herein, refused to issue an occupancy certificate for the house until the problems were corrected. Allied hired Lloyd M. David, a defendant herein, and Chicago Shoring and Underpinning, Inc., to rectify the foundation problems existing in the house. David certified that the house was structurally sound. In June 1972, Allied sold the house to Mr. and Mrs. Raker. The village granted a conditional certifi-

cate of occupancy for the house on July 12, 1972.

The major structural problems continued, and Allied retained Paul G. Cassidy & Co. (Cassidy), a foundation specialist, to evaluate the situation. Cassidy informed Allied that the foundation of the house was seriously defective. Between December 1972 and January 1973, Cassidy attempted to correct the foundation problems without success.

In February 1973, the village caused Allied to repurchase the house from Mr. and Mrs. Raker because of the continuing serious structural problems. In February 1974, Presley, the company that succeeded Allied as the owner and developer of the subdivision in which the house was built, leased the house to Mr. and Mrs. Allen. The structural and foundation problems continued.

In December 1975, Presley sold the house to the Ortells, "as is," for $36,500. The problems continued while the Ortells occupied the house. In 1977, Clyde Sana, a defendant herein, agreed to act as real estate broker for the Ortells to sell the house. In March 1978, as a result of Sana's efforts, plaintiffs purchased the house from the Ortells for $64,900. Shortly after moving into the house, plaintiffs noticed the structural problems. On May 30, 1979, plaintiffs filed suit against defendants mentioned herein.

GENERAL LAW—PLEADINGS

■■ ■ The purpose of pleadings is to present, define and narrow the issues and limit the proof needed at trial. Pleadings are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307-08, 430 N.E.2d 1005, 1009.) Furthermore, the prime purpose of pleadings must never be hidden in a morass of technicalities. *Parrino v. Landon* (1956), 8 Ill. 2d 468, 470, 134 N.E.2d 311, 313.

Indicating clearly what is required for sufficient pleading in Illinois, our supreme court stated as follows:

"To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. [Citations.] Second and unlike Federal practice, the complaint must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed. [Citation.]" (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430

N.E.2d 1005, 1009.)

The essential test of the sufficiency of the complaint is whether it reasonably informs the defendant of a valid claim under a general class of cases of which the court has jurisdiction. (*Kramer v. McDonald's System, Inc.* (1978), 61 Ill. App. 3d 947, 956, 378 N.E.2d 522, 531, *aff'd* (1979), 77 Ill. 2d 323, 396 N.E.2d 504.) In determining the sufficiency of the complaint, the court must accept as true all well-pleaded facts and reasonable inferences drawn therefrom. (*Morse v. Nelson* (1977), 48 Ill. App. 3d 895, 898, 363 N.E.2d 167, 169.) No pleading is bad in substance where it reasonably informs the opposite party of the nature of the claim. (Ill. Rev. Stat. 1979, ch. 110, par. 42(2).) Finally, a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under pleadings which would entitle plaintiff to relief. See *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 325 N.E.2d 799.

### NEGLIGENCE: COUNTS V, IX, X, AND XII

Defendants Presley, David, Tinley Park, and R.W. Robinson argue that plaintiffs cannot state a cause of action against them for negligence. They contend that for plaintiffs to recover for negligence, they must have suffered more than an economic loss; that since they suffered only an economic loss, the trial court correctly dismissed plaintiffs' negligence claim against them. Additionally, Tinley Park argues that plaintiffs have no cause of action in negligence against it because it owed no duty to plaintiffs.

#### A. TINLEY PARK—DUTY

■ Plaintiffs allege that because Tinley Park allegedly had a common law duty to enforce its building codes, it also had a common law duty to protect them and the public from any defects it discovered or should have discovered as a result of its inspection of the house purchased by plaintiffs. We disagree. A municipality owes no common law duty to members of the general public merely because it enforces its building code requirements. (*Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 484, 475 N.E.2d 822, 827.) Liability arises only when a special duty is owed to the particular plaintiff different from that owed to the public at large. A special duty arises when the entity steps out of its governmental function and acts in a private capacity or develops a "relationship" with the plaintiff. *Lakeside Condominium "C" Association v. Frediani Developers, Inc.* (1985), 135 Ill. App. 3d 972, 973.

▇ Here, the record and plaintiffs' count X indicate that Tinley Park did not step out of its governmental function and act in a private capacity, nor did it develop a relationship with plaintiffs. Because Tinley Park owed no general or special duty to plaintiffs, they have no cause of action against it in negligence.

## B. NEGLIGENCE—ECONOMIC LOSS

▇ Defendants Presley, David, and R.W. Robinson, citing *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, argue that plaintiffs have no cause of action in negligence against them for only economic loss. We agree. In *Redarowicz*, the court held that economic losses only, resulting from latent construction defects, are not recoverable under a negligence theory. The court reasoned that for a plaintiff to recover in negligence there must be a showing above and beyond consumer expectations. (92 Ill. 2d 171, 177.) In adopting the economic loss doctrine, the Illinois Supreme Court recognized that when defects are "of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality ***, contract, rather than tort, law provides the appropriate set of rules for recovery." *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88, 435 N.E.2d 443, 450.

▇ Defendants primarily contend that since plaintiffs suffered only property damage their loss is an economic loss. They ask that we look only at the nature of the damage and conclude that it is an economic loss. As was noted in *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 605, 459 N.E.2d 1085, 1090, *aff'd in part, rev'd in part* (1985), 105 Ill. 2d 474, 475 N.E.2d 822, our supreme court in *Moorman Manufacturing Co.* and its progeny did not intend that the nature of the damages be the sole factor used in distinguishing a tort claim from a contract claim.

The following quote from *Moorman Manufacturing Co.*, citing with approval the passage from *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3rd Cir. 1981), 652 F.2d 1165, 1172-73, indicates the factors that should be analyzed in ascertaining whether or not the loss was an economic loss:

> " '[T]he items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a

particular claim.' " *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 85, 435 N.E.2d 443, 449.

In assessing the factors cited in *Moorman Manufacturing Co.*, we conclude that plaintiffs cannot show a loss beyond a consumer's commercial expectation and therefore suffered only an economic loss. Thus, plaintiffs cannot recover in negligence against any of the defendants. We hold that the trial court did not err in dismissing all negligence counts against defendants.

We note that the economic loss doctrine has created undue hardship upon plaintiffs who wish to recover in tort against the contractors and subcontractors who perform substandard or negligent work. Because of this hardship, some courts have severely restricted its applicability. (See *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 473 N.E.2d 421; *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 471 N.E.2d 915; *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, *aff'd in part, rev'd in part* (1985), 105 Ill. 2d 474, 475 N.E.2d 822.) We agree with their approach to the economic loss doctrine. Nevertheless, because the rule of *stare decisis* demands that we be bound by the decision of the Illinois Supreme Court, we must affirm the trial court's dismissal of defendants.

EXPRESS WARRANTY OF HABITABILITY: COUNT VII

Plaintiffs contend that the trial court erred in dismissing their express warranty of habitability claim against Presley because they are the intended beneficiaries of the letter of guaranty between the village of Tinley Park and Presley. Plaintiffs cannot show that they are the intended beneficiaries of the agreement between the village and Presley. Presley submitted a letter of guaranty to Tinley Park, certifying that the house was structurally sound. Plaintiffs allege they are third parties to the agreement.

A third party to an agreement may not sue on it unless he is a direct and intended beneficiary. (*People ex rel. Resnik v. Curtis & Davis Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 384, 400 N.E.2d 918, 919-20.) The benefit must affirmatively appear from the language of the instrument. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54, 421 N.E.2d 182, 187.) Presley's mere knowledge that the guaranty may benefit a third party or that the residence might be purchased by a third party does not establish the requisite intention. (85 Ill. 2d 44, 56, 421 N.E.2d 182.) Furthermore, to properly plead a claim based on breach of an express warranty, plaintiffs must allege facts which show the intent to confer the benefit. 85 Ill. 2d 44, 56,

421 N.E.2d 182.

A review of the letter of guaranty reveals that neither plaintiffs nor any other purchasers or purchasers as a class are mentioned as intended beneficiaries of the guaranty between the village and Presley. Further, plaintiffs do not allege facts that show Presley intended the guaranty to benefit plaintiffs. We hold that plaintiffs have no cause of action for express warranty against Presley based on the letter of guaranty between Presley and the village.

## IMPLIED WARRANTY OF HABITABILITY: COUNT VI

### A. STATUTE OF LIMITATIONS

This analysis only applies to defendant Presley. There is no need to address the arguments of defendants David, Tinley Park, and R.W. Robinson concerning the statute of limitations, since the trial court's dismissal as to all claims against them have been affirmed on other grounds.

Presley argues that the trial court correctly dismissed plaintiffs' implied warranty of habitability claim against him because the statute of limitations period for filing a claim had expired. The applicable statute of limitations is the five years provided in section 15 of the Limitations Act for actions to recover damages for an injury done to property, real or personal (Ill. Rev. Stat. 1979, ch. 83, par. 16), now codified as section 13—214 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—214).[1] Section 15 of the Act provides that an action of this character "shall be commenced within 5 years after the cause of action accrued" (Ill. Rev. Stat. 1979, ch. 83, par. 16). The accrual of a cause of action starts the limitations clock. Under the discovery rule, a cause of action does not accrue until a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 415, 430 N.E.2d 976, 980.) The discovery rule applies to actions against contractors for failure to construct or design a building properly. (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976; *Society of Mount Carmel v. Fox* (1975), 31 Ill. App. 3d 1060, 335 N.E.2d 588, *appeal after remand*

---

[1]Section 13—214 of the Code of Civil Procedure provides a shorter period for bringing actions concerning design and construction of a building: suit must be filed within two years of when the plaintiff knew or should have known of the "act or omission" complained of. This provision was not in effect when the plaintiffs filed their complaint and therefore does not apply here. *Hupp v. Gray* (1978), 73 Ill. 2d 78, 382 N.E.2d 1211.

(1980), 90 Ill. App. 3d 537, 417 N.E.2d 480.

 Plaintiffs filed their claim in May 1979. They purchased the house in question in 1978. The record indicates there is no reason that plaintiffs should have known of the defects before they purchased the property. Consequently, plaintiffs filed their claim well within the five-year period specified in section 15 of the Limitations Act. Ill. Rev. Stat. 1979, ch. 83, par. 16.

Defendant Presley, citing *Auster v. Keck* (1976), 63 Ill. 2d 485, 349 N.E.2d 20, contends that plaintiffs pleaded insufficient facts to take advantage of the discovery rule. In *Auster*, plaintiffs bought a nine-year-old house. Three years later, the ceiling collapsed, and plaintiffs sued the architects for negligent design of the building. The court held that because plaintiffs failed to plead that the defective condition remained undiscovered from the time construction was completed until the date it became known to them the action was not timely filed when filed nine years after the completion of construction. *Auster* is distinguishable from plaintiffs' claim. Plaintiffs' claim in *Auster* was in negligence; here, plaintiffs' claim is for breach of an implied warranty of habitability. Thus, the pleadings requirements in *Auster* do not apply to plaintiffs' case.

## B. WAIVER

 Defendant Presley argues that plaintiffs have no cause of action for implied warranty of habitability because plaintiffs purchased the house from the Ortells who purchased it from defendant "as is." He argues that plaintiffs' implied warranty of habitability claim is derived from the prior purchasers—the Ortells; that since the Ortells waived the implied warranty of habitability, it is also waived as to plaintiffs. We need not resolve the issue of whether or not a waiver of implied warranty of habitability by a prior purchaser of a house waives that cause of action as to all subsequent purchasers of the house, for we conclude that Presley failed to show that the Ortells knowingly waived the implied warranty of habitability.

Presley has the burden of showing that the Ortells knowingly waived their implied warranty of habitability. He must show a conspicuous provision which fully discloses the consequences of its inclusion and also that such was in fact the agreement reached. (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 43, 389 N.E.2d 1154, 1159; *Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310, 317, 415 N.E.2d 1224, 1229.) We conclude that, since Presley did not present sufficient evidence, he has not met his burden of showing that the Ortells knowingly waived the implied warranty of habitability

and, thus, there is no waiver issue as to plaintiffs, who purchased the house from the Ortells.

## C. DISCOVERY OF DEFECT IN REASONABLE TIME

■■ Defendant Presley last contends that plaintiffs have no cause of action for implied warranty of habitability because the defects existing in the house, of which plaintiffs complain, did not manifest themselves within a reasonable time after purchase by the original owner (the first purchaser). Plaintiffs argue that under the reasoning of *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, they have stated a cause of action for implied warranty of habitability. The court in *Redarowicz* held that the implied warranty of habitability to a subsequent purchaser is limited to latent defects which manifest themselves within a reasonable time of purchase by the original owner. The court reasoned that a home buyer's expectation should be protected and that the buyer's expectation should not be limited by his status as purchaser of the house from the original buyer. (92 Ill. 2d 171, 195, 441 N.E.2d 324.) In *Redarowicz*, the subsequent purchaser was the second purchaser of the house. The court did not indicate whether its reasoning applied to a succession of subsequent purchasers. Plaintiffs contend that although they did not purchase the house from the original buyer, as was the case in *Redarowicz*, this should not prevent the court from applying the reasoning and holding of *Redarowicz* to the particular facts of this case. We agree.

The record shows that defendant finished construction of the house in 1971, sold it to the first purchaser that year, and rescinded the contract that same year, because of structural and foundation problems. The record further indicates that defendant sold the house again in 1972, and in 1973 defendant once again rescinded the contract with the purchasers due to structural and foundation problems. In 1975, defendant sold the house to the Ortells, who sold it to plaintiffs in 1978. Between 1971 and 1975, defendant attempted on several occasions to correct the existing problems; he was unsuccessful.

Under the facts of this particular case, there is a question of fact as to when the house should be considered new. Whether a house is new for purposes of the issue of a warranty is a question of fact to be determined on a case-by-case basis. (*Park v. Sohn* (1982), 89 Ill. 2d 453, 463, 433 N.E.2d 651, 656.) In *Park*, the defendant-contractor claimed that because he had lived in the house for two years the house was not new. The court held that defendant's act of residing in the house for two years before selling it to plaintiffs did not preclude the court from concluding that the house was new for purposes of the

implied warranty of habitability analysis. (89 Ill. 2d 453, 463, 433 N.E.2d 651.) Similarly, we hold that defendant's act of negligently building the house as to the first two purchasers (contracts rescinded because of structural problems) does not preclude us from concluding that the house was new when purchased by the Ortells.

■■ Since we conclude that the Ortells purchased the house new, it follows that they were the original buyers for purposes of the warranty analysis. Plaintiffs purchased the house from the Ortells and therefore are the second and subsequent purchasers for purposes of the warranty analysis. Plaintiffs discovered the defects three years after the Ortells bought the house. We hold that the latent defects, discovered by plaintiffs three years after the Ortells purchased the house, manifested themselves within a reasonable time after purchase by the original buyers, the Ortells. However, we believe that even if we had found that the original purchase of the house was in 1971, it is likely we would have concluded that the defects discovered by plaintiffs in 1978 manifested themselves within a reasonable time after purchase by the original buyers.

FRAUD: COUNT IV

■■ Plaintiffs contend that the trial court erred in dismissing count IV against defendant Sana. Although plaintiffs' count IV is titled as a breach of a broker's duty to disclose, a review of this count indicates that plaintiffs pleaded the elements of fraud. Intentional misrepresentation of a material fact made by a broker is the basis for a cause of action for common law fraud. (See *Pustelniak v. Vilimas* (1933), 352 Ill. 270, 185 N.E. 611; *Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887, 891, 453 N.E.2d 1129, 1131.) Plaintiffs' failure to properly title count IV is not fatal. It is merely a mistake in form and not in substance.

For a complaint to state a cause of action for fraud, it must be pleaded with specificity, particularity and certainty. (*Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 1104, 435 N.E.2d 528, 529-30.) A complaint in fraud must allege (1) that a false statement of material fact was made as opposed to an opinion; (2) that the party making the representation knew or believed the representation to be untrue; (3) that the party to whom the representation was made had a right to rely on it and in fact did so; (4) that the representation was made for the purpose of inducing the other party to act, or refrain from acting upon it; and (5) reliance by the person to whom the statement was made led to his injury. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 185-86, 441 N.E.2d 324, 331.) A review of count

IV shows that plaintiffs have pleaded the necessary elements required to have a cause of action in fraud. We hold that the trial court erred in dismissing defendant Sana as to count IV.

### ABUSE OF DISCRETION

■■ Plaintiffs next argue that the trial court abused its discretion when it (1) refused them leave to file a third amended complaint and (2) refused them leave to amend their second amended complaint to include additional counts against defendant David The decision of a trial judge as to whether to allow an amendment to the pleadings should not be disturbed on review absent an abuse of discretion. The test to be applied in determining whether the trial court has abused its discretion is to ask whether the trial court's decision furthers the ends of justice. *Murphy v. Roppolo-Prendergast Builders, Inc.* (1983), 117 Ill. App. 3d 415, 418-19, 453 N.E.2d 846, 849.

■■ We note that plaintiffs, in arguing that the court erred in refusing them leave to file a third amended complaint, address only count III of the proposed third amended complaint. Thus, our review is restricted to count III also. Plaintiffs first contend that the trial court abused its discretion because count III of the proposed amended complaint states a cause of action for fraudulent concealment against Sana and Presley. A review of count III of the proposed amended complaint reveals that plaintiffs' allegations as to the conduct of Sana are conclusory. To properly allege a cause of action for fraud, the pleadings must contain specific allegations of facts from which fraud is the necessary or probable inference. (*Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 1105, 435 N.E.2d 528, 530.) Plaintiffs' pleadings in fraud against Presley and Sana are deficient; the allegations are conclusory. We hold that the trial court did not abuse its discretion in refusing plaintiffs leave to file a third amended complaint.

■■ Plaintiffs next argue that the trial court abused its discretion when it refused them leave to amend their second amended complaint to add counts against David. David is a contractor hired by the developer (Allied) to repair the foundation problems existing in the house. Plaintiffs' two additional counts consist of a claim for breach of an express warranty of habitability and a claim for breach of an implied warranty of habitability. A review of the record indicates that plaintiffs have no cause of action against David for breach of an express warranty of habitability or an implied warranty of habitability.

Plaintiffs have no action for a breach of express warranty of habitability because they cannot show that they are intended beneficiaries

of the agreement between David and Presley. Moreover, they have not pleaded sufficient facts to state a cause of action for breach of an express warranty. Additionally, plaintiffs have no cause of action for breach of an implied warranty against David. An action based on implied warranty of habitability cannot be brought against a subcontractor unless the purchaser has no recourse against the builder-vendor and he has sustained loss due to the faulty and latent defects in the house caused by the subcontractor. (*Minton v. Richards Group* (1983), 116 Ill. App. 3d 852, 855, 452 N.E.2d 835, 837.) Here, plaintiffs have recourse against the builder-vendor. We hold that the trial court did not abuse its discretion.

For the reasons set forth above, the trial court's decision (1) denying plaintiffs leave to file a third amended complaint, (2) denying plaintiffs leave to amend their second amended complaint to file additional counts against David, and (3) dismissing counts V, VII, IX, X, and XII is affirmed. The trial court's dismissal of counts IV and VI is reversed, and this cause is remanded with directions that plaintiffs be permitted to maintain their suit in accordance with the holdings stated herein.

Affirmed in part and reversed in part and remanded, with directions.

JIGANTI, P.J., and O'CONNOR, J., concur.