**David C. MONTGOMERY, Plaintiff,**

**v.**

**CITY OF CHICAGO, a Municipal Corporation, R. Defelice, P. Kavaritou, John Doe and Penn Trailers and Truck Bodies Corporation, Defendants.**

**No. 86 C 03872.**

United States District Court,
N.D. Illinois, E.D.

March 8, 1991.

Robert J. Frejlich, Westchester, Ill., Harvey N. Levin, Joe Basile, Cairns & Levin, Chicago, Ill., for plaintiff.

Paul M. Sheridan, William Wenzel, Diane M. Pezanoski, Kelly R. Walsh, Asst. Corp. Counsels, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff David C. Montgomery sustained various injuries while being transported with his hands handcuffed behind his back in a City of Chicago police squadrol on August 27, 1985. During his ride, Montgomery was tossed around the squadrol, causing him to strike various parts of the compartment. Montgomery attributes his injuries in part to the allegedly unreasonably dangerous nature of the prisoner transportation compartment. Accordingly he has sued, among others, the manufacturer of the compartment, Penn Trailers and Truck Bodies Corp. ("Penn").

Penn has moved for summary judgment on the ground that under Illinois law it owed no duty to the plaintiff. Penn has also moved to dismiss the complaint for failing to make certain specific allegations giving rise to an exception to that rule. For the following reasons we deny both motions.

### I.

Summary judgment is appropriate when the moving party demonstrates that all of the facts that could affect the outcome of the lawsuit are undisputed and that it is entitled on those facts to judgment as a matter of law. Fed.R.Civ.P. 56(c), *see also Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988). The moving party bears the burden of establishing the absence of any disputed material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

In support of its motion for summary judgment, Penn relies on *Hunt v. Blasius,*

74 Ill.2d 203, 23 Ill.Dec. 574, 384 N.E.2d 368 (1979). *Hunt* holds that an independent contractor owes no duty to third persons to judge the adequacy of plans or specifications that it merely has contracted to follow, unless the specifications are so obviously dangerous that no competent contractor would follow them. *Id.* at 208–10, 23 Ill.Dec. at 577, 384 N.E.2d at 371. In the context of the present motion, *Hunt* presents two questions for analysis. We find that genuine issues of material fact exist as to both questions.

## II.

The first part of the *Hunt* holding requires us to consider whether Penn may be deemed an independent contractor who has merely followed specifications drawn up by another party—in this case the City of Chicago. It is undisputed that, with one exception, Penn followed the City's ultimate specifications for the transportation compartment.[1] Montgomery, however, maintains that Penn did more than "merely follow" the specifications, but in fact played a significant role in the creation of the squadrol specifications. Thus, Montgomery's opposition to summary judgment on this issue rests on the proposition that *Hunt*'s disclaimer of a duty on the part of independent contractors to third persons does not apply when the contractor has participated in the creation of the specifications or designs ultimately followed.

Neither party directly addresses whether such a proposition is a proper interpretation of *Hunt*, or is consistent with subsequent Illinois decisions applying *Hunt*. Penn's motion and reply, however, effectively concede the legal issue, by focusing exclusively on the questions whether the facts create any reasonable inference that Penn did anything more than follow the specifications set by the City, or whether Penn's involvement with the City prior to the issuance of the contract concerned aspects of the design that Montgomery claims were unsafe.

■ Even assuming the point has not been conceded, we find that Illinois case law supports Montgomery's interpretation of *Hunt*. Although the case is not precisely on point, in *Ferentchak v. Village of Frankfort*, 105 Ill.2d 474, 86 Ill.Dec. 443, 475 N.E.2d 822 (1985), the Illinois Supreme Court concluded that a civil engineer who had contracted to build a water drainage system was not free from liability to third persons under *Hunt* because he was not following the design of another, but instead created the design himself. We see no sound reason why the distinction in *Ferentchak* should not apply when the defendant has shared in the drafting or creation of designs or specifications. We find unconvincing Penn's contention that liability should not be imposed for its participation because it did not have final approval of the specifications. If that was the case, the engineer in *Ferentchak* would have been relieved of liability once the party with whom he contracted accepted the system as designed. We do agree, however, with the implicit point of Penn's factual arguments in reply that, consistent with the principles of *Hunt*, the extent of a party's potential liability for participation should be limited only to those aspects of the design or specifications on which it had input and which advice was either relied upon or adopted in making the final specifications. *Cf. Ferentchak*, 105 Ill.2d at 479–81, 86 Ill.Dec. 443, 475 N.E.2d at 825 (engineer was not liable for aspects of project for which he did not assume any kind of responsibility).

■ Turning to the specific facts of this case, we see little room to doubt that Penn had input into the creation of the final specifications for the squadrols in this case. The City of Chicago's old squadrols had been deteriorating and it wanted to modernize the design by squaring it off, providing for more room, and making it safer and longer lasting inside. In its answer to the complaint, the City states that the plans for the new squadrols "were drawn up in con-

---

**1.** Penn varied from the specifications by making the pitch of the seats in the transportation com- partment deeper than requested.

junction with assistance from IRVING NUGER." Nuger is the president of Penn. According to Penn's own submissions, Nuger had several meetings with City officials prior to any contract being issued. Nuger's function was to advise the City "as to how Penn could make the squadrols to meet the City's needs." Reply at 4. These facts alone are sufficient to create an issue of fact on the initial question of participation.

■ We next consider, however, whether particular aspects of Penn's participation may have pertained to the problems posed by Montgomery. Montgomery claims that the following alleged deficiencies in the design led to his injury: the squadrol prisoner compartment lacked padding; the two benches in the compartment were made of fiberglass and ran the length of the truck facing sideways, rather than facing rearward or forward; there were no seatbelts or other restraint systems; the compartment contained sharp protuberances; and there were no grab rails for a prisoner to hold onto. We find that the evidence adduced on summary judgment, though not overwhelming, creates a sufficient question of fact as to whether Penn was partially responsible for those aspects of the design that may have caused Montgomery's injury.

As we have indicated, the City's goal with respect to a new design for the squadrol was to "... modernize it, square it off, give them more room, *make it a little safer.*" (emphasis added) (Deposition of Officer Horky, *Hayes v. Mercy Hospital*, p. 21.). The evidence contained in the parties' submission suggests that Nuger's involvement with the City in preparing specifications to meet these objectives was extensive. Nuger, along with other Penn employees, met with City personnel as many as twelve times before the specifications were adopted and the contract was entered into. There is evidence that during these discussions, Nuger made particular suggestions that were ultimately adopted in design aspects. To provide one example, during its discussions with City officials, Nuger indicated that Penn could provide fiber-

glass seats to replace the padded seats formerly in use. It may be argued, and a jury might well conclude, that the fiberglass seats posed a greater risk of sliding than the padded seats and, therefore, a failure to account for the added risk of harm in its discussions with the City amounted to negligence.

Even on the question of seatbelts, we think the matter is best left to the jury to decide whether Penn's input, or lack of input, played a part in the decision not to include seatbelts in the design. Although at this time we do not know all of the details of what went into the decision not to include seatbelts in the design, there is evidence that during the discussions, Nuger asked the Chicago police officers whether they wanted seat belts in the squadrol. He thought it was a logical question to ask. The officers replied that they did not want the seat belts because of concerns that a prisoner might hang himself. (Nuger Deposition, *Franklin v. City of Chicago*, 102 F.R.D. 944 (N.D.Ill. 1984)) Having raised the subject of seatbelt requirements at the predesign stage, Nuger's failure to say anything more on the subject might be read as acquiescence and thereby create an inference that the City relied on Nuger's agreement with its then preliminary assessment of the weight of the pertinent safety considerations.

■ At trial, of course, Montgomery will have the burden of proof regarding which aspects of the new design Penn had input and which were relied upon or adopted contributed to the actual injuries suffered by him. Nevertheless, after assessing the record in the light most favorable to Montgomery, we find sufficient factual dispute regarding the nature of Penn's input in the development of the squadrol specifications to allow a jury to decide the issue.

### III.

■ Notwithstanding the issue of participation, we also find a question of fact exists as to whether the squadrol was so unreasonably dangerous that no competent contractor would agree to manufacture it. In such an instance Penn plainly has a duty

to exercise its independent judgment under *Hunt*. Montgomery relies on the testimony of an expert witness, Roland L. Ruhl, Ph.D., who has identified several reasons why the design of the squadrol is unreasonably dangerous and why the dangers should have been known to the manufacturer. This testimony sufficiently establishes an inference such that a jury might conclude that the squadrol design was so unsafe or unreasonably dangerous that no competent contractor would have agreed to manufacture it.[2]

## IV.

 Finally, in the event we deny the motion for summary judgment, Penn has moved to dismiss Montgomery's complaint for failing to state a claim upon which relief can be granted because the allegations in the complaint do not specifically mimic the language in *Hunt* that the specifications were so dangerous that a careful and competent contractor would not have carried them out. Montgomery's complaint alleges that Penn manufactured the squadrol and sold it to the City with knowledge of its intended uses, which included the transport of prisoners with their hands cuffed behind their backs. The complaint goes on to allege that Penn knowingly provided the City with an unreasonably dangerous prisoner compartment. We find these allegations plainly sufficient to support the inference required by *Hunt*, and therefore the precise language is unnecessary. Even assuming Penn had no input into the specifications for the squadrol, it is difficult to imagine a competent contractor who would knowingly provide a compartment that was unreasonably dangerous for its known uses.[3] Accordingly, we deny the motion to dismiss.

In connection with Penn's motion to dismiss, we find it necessary to comment on certain aspects of the motion practice of Penn's counsel that we find quite troubling. First, although the rules do not impose a deadline on filing Rule 12(b)(6) motions, Penn's motion to dismiss comes exceedingly late in these proceedings. This case has been on file against Penn for over three years, and despite subsequent amendment to other aspects of the complaint, the allegations against Penn have remained unchanged. Penn's counsel has had more than enough time to assess the sufficiency of the allegations against it. To bring a Rule 12(b)(6) motion now—on the eve of the filing of the joint pretrial order, after discovery has closed, and after Penn has joined in discovery issues that it now claims were insufficiently alleged—perverts the liberality of the Federal Rules of Civil Procedure, particularly since the rules governing amendment of complaints would in this instance have otherwise rendered Penn's motion an exercise in futility.

 Second, the reply brief in support of summary judgment demonstrates an extraordinary lack of understanding of the plain text and fundamental operation of Rule 56 of the Federal Rules of Civil Procedure regarding summary judgment. In the reply, Penn's counsel has moved to strike certain exhibits offered by Montgomery, and all references to the City of Chicago's pleadings. Penn's counsel contends that these materials lack an evidentiary foundation and cannot be used to create a genuine

---

**2.** Although Nuger seeks to avoid liability for his company by professing that he did not know that prisoners might be transported with their hands handcuffed behind their backs, we believe that a trier of fact might well find that it would not have been unreasonable for Penn to expect that prisoners would be transported in such a manner. In addition, it is not at all evident that the squadrol would be regarded safe as a matter of law for the transport of persons who were not handcuffed.

**3.** Indeed, it would therefore appear that liability under *Hunt* ultimately depends on whether a contractor knows the intended purposes of a

product it has agreed to manufacture based on another's specifications. If the product is not unreasonably dangerous with respect to what the manufacturer has reason to know are its intended uses then the manufacturer will not be held liable. *See, e.g., Clark v. Penn Versatile Van*, 197 Ill.App.3d 1, 143 Ill.Dec. 708, 554 N.E.2d 643 (1st Dist.1990) (manufacturer not liable for injuries to a passenger caused by the lack of a passenger seat or a handhold in a cargo "step van," since manufacturer only had reason to believe that the intended function of stepvan was to transport one person—the driver).

issue of material fact because Rule 56(e) "requires an adverse party's response to a motion for summary judgment to set forth specific facts *by affidavits* showing that there is a genuine issue for trial." Reply at 1. Rule 56(e), however, plainly allows an adverse party to respond "by affidavits *or as otherwise provided in this rule.*" Fed.R.Civ.Proc. 56(e) (emphasis added). In addition to affidavits, other permissible forms of response include depositions and answers to interrogatories, as well as pleadings and admissions on file. *See* Fed. R.Civ.Proc. 56(c) and (e). Thus, it was wholly appropriate for Montgomery to refer to the pleadings of opposing parties, and to refer to matters and evidence brought out in the course of the deposition of his expert witness Dr. Ruhl, whose opinion testimony was based upon the exhibits that Penn's counsel has moved to strike. There may have been other grounds for challenging the evidentiary foundation of some of these materials, but the failure to adduce them by affidavit is not one of them.[4]

 Finally, in his motion on behalf of Penn, Penn's counsel asserted as an uncontested issue of fact that only City of Chicago police officers were involved in drawing up the specifications for the squadrols. In support of that contention, Penn's counsel cited to a portion of the City's Answers to Supplemental Interrogatories in another case, *Hayes v. Mercy Hospital & Medical Center,* Case No. 83L–26000 (Circuit Court of Cook County). However, Penn's counsel did not mention that in the same answer the City states: "The plans were drawn up in conjunction with assistance from Irving Nuger." We are gravely concerned with Penn's counsel's failure to point out this plainly relevant fact, one that would appear to directly contradict Penn's implicit assertion. Selective omission of such relevant and apparently contradictory information exceeds the bounds of zealous advocacy and is wholly inappropriate. It was Penn's

burden to show that no issue of material fact exists. The proper course would have been to confront the issue up front, rather than to spend the greater portion of a reply brief explaining why Nuger's assistance was either legally irrelevant or not a proximate cause of Montgomery's injuries. Indeed, we might have disregarded the greater portion of Penn's reply, since much of it does not address new issues raised by Montgomery in his response, but simply offers additional explanation in favor of Penn's original argument and reliance on *Hunt. See* Reply at 2.

### CONCLUSION

Penn's motions for summary judgment, to dismiss, and to strike are denied. It is so ordered.

---

**4.** Penn's counsel suggests later in the reply that Montgomery has failed to properly authenticate the reports of Dr. Ruhl and Dr. Schneider. Reply at 12. This contention, however, was not raised in that portion of the brief seeking to

have the reports stricken. Further, though we acknowledge Montgomery's burden to satisfy technical evidentiary requirements, we doubt that Penn would seriously challenge whether the reports were actually authentic.